NIMA GHARAVI
4610 North Clark St. #1098
Chicago, IL 60640
+1 (773) 899-4688
dmca@midwestwrestle.com

Movant, *Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE DMCA 512(h) SUBPOENA TO GOOGLE LLC | Case No.: 3:25-mc-80164-WHO<br><br>NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH DMCA SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>**Judge:** Hon. William H. Orrick<br>**Date:** November 19, 2025<br>**Time:** 2:00<br>**Courtroom:** Courtroom 2 – 17th Floor |

# NOTICE OF MOTION AND MOTION

TO RESPONDENT GOOGLE LLC AND ALL PARTIES OF RECORD:

**PLEASE TAKE NOTICE** that on November 19, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the above-entitled Court located at Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 2 – 17th Floor, before the Honorable William H. Orrick, Movant Nima Gharavi ("Mr. Gharavi"), appearing *pro se*,[1] will and hereby does move the Court for an order compelling Respondent Google LLC ("Respondent") to provide complete compliance with the DMCA subpoena served pursuant to 17 U.S.C. § 512(h).

This motion is made pursuant to Federal Rule of Civil Procedure 45 and 17 U.S.C. § 512(h), and is based upon this Notice of Motion and Motion, the accompanying Declaration of Nima Gharavi and supporting exhibits, all papers and pleadings on file herein, and such oral argument and evidence as may be presented at the hearing.

## PROCEDURAL NOTE

This motion is being re-noticed for hearing before the Honorable William H. Orrick following reassignment from Magistrate Judge Donna M. Ryu. The motion was originally filed on October 2, 2025 (ECF No. 3), simultaneously with Movant's declination of magistrate judge jurisdiction (ECF No. 5). Because Movant declined magistrate jurisdiction on this dispositive miscellaneous matter, no hearing was noticed before Magistrate Judge Ryu, as Movant anticipated reassignment to a U.S. district judge pursuant to established procedures. *See In re DMCA Subpoena to X Corp.*, No. 3:23-mc-80294-PHK, Dkt. No. 9 (N.D. Cal. Jan. 17, 2024); *In re DMCA 512(h) Subpoena to Dynadot Inc.*, No. 3:25-mc-80138-TLT, Dkt. No. 8 (N.D. Cal. July 16, 2025). On October 14, 2025, the Clerk issued notice of impending reassignment (ECF No. 12). The motion is substantively unaltered except for minor formatting to ensure compliance with the 25-page limit under Civil Local Rule 7-2(b).

---

[1] As a *pro se* party with no legal education, Mr. Gharavi respectfully requests the Court "construe the pleadings liberally ... to afford the petitioner the benefit of **any** doubt." *In re Stebbins*, No. 3:25-mc-80278-TLT, 2025 WL 2689664, at *1 (N.D. Cal. Sept. 17, 2025) (citation omitted) (emphasis added); *United States v. Hardiman*, 982 F.3d 1234, 1236 (9th Cir. Dec. 15, 2020) (citation omitted) ("A document filed *pro se* is 'to be liberally construed.'").

## STATEMENT OF RELIEF REQUESTED

Mr. Gharavi respectfully requests that the Court enter an order:

1. **COMPELLING** Respondent to search all systems that contain subscriber identifying information for the accounts identified in the subpoena and produce complete subscriber information within fourteen (14) days;

2. **REQUIRING** Respondent to provide a declaration from a knowledgeable Google LLC employee certifying the completeness and accuracy of its production;

3. **DECLARING** that Respondent's objections were untimely and waived under Fed. R. Civ. P. 45(d)(2)(B);

4. **DECLARING** that Google LLC qualifies as the service provider under 17 U.S.C. § 512(k)(1) and must search all relevant systems including AdSense;

5. **ORDERING** removal of any confidentiality restrictions imposed without court authority;

6. **IMPOSING** sanctions against Respondent for discovery misconduct; and

7. **GRANTING** such other relief as the Court deems just and proper.

Dated: October 15, 2025

Respectfully submitted,

/s/ Nima Gharavi
Nima Gharavi

Movant, *Pro Se*

# **TABLE OF CONTENTS**

Page

STATEMENT OF ISSUE TO BE DECIDED................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................2

III.   LEGAL STANDARD...........................................................................................2

IV.    ARGUMENT.........................................................................................................3

    A.     Respondent Waived All Objections Under Rule 45(d)(2)(B)........................3

    B.     Untimely Objections to Specific Grounds Are Waived................................3

    C.     Respondent's Systematic Use of Boilerplate Objections ............................4

    D.     No Good Cause Exists for Respondent's Untimely Objections ...................7

    E.     Cox Communications Does Not Excuse Untimely Objections ...................8

    F.     Respondent Misinterprets Cox Communications and § 512(k)(1) ..............9

    G.     Google LLC Qualifies as the Service Provider Under § 512(k)(1) .........11

    H.     Respondent's Productions Contradict Its Legal Position .........................12

    I.     Respondent's Position Would Nullify § 512(h) Discovery........................14

    J.     Respondent's Service of Process Argument Lacks Merit ........................16

    K.     Respondent's Undue Burden Claim Contradicts Its Own Practice ..........19

    L.     Respondent's Technical Capabilities Belie Its Burden Claims .................21

    M.     Sanctions Are Warranted for Discovery Violations .................................22

V.     CONCLUSION AND RELIEF SOUGHT ........................................................24

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Allen v. Cnty. of Lake*,

    2016 WL 5930281 (N.D. Cal. Oct. 12, 2016)..................................................................8

*Cordova v. 1 Doe*,

    2025 WL 2262999 (N.D. Cal. July 11, 2025)..............................................................14

*Cordova v. Huneault*,

    No. 5:25-cv-04685-VKD (N.D. Cal. Sept. 12, 2025)..................................................19

*Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*,

    2016 WL 7486606 (C.D. Cal. Oct. 27, 2016)............................................................20

*David Stebbins v. Google LLC*,

    No. 25-2007, (3rd Cir. Aug. 5, 2025) .........................................................................9

*Dominguez v. Ford Motor Co.*,

    2021 WL 6496838 (C.D. Cal. Dec. 1, 2021)...............................................................8

*Franco v. Alorica Inc.*,

    2021 WL 6104816 (C.D. Cal. Nov. 5, 2021)...............................................................4

*FTC v. Enforma Nat. Prods., Inc.*,

    362 F.3d 1204 (9th Cir. Apr. 1, 2004) ......................................................................22

*Gonzales v. Google, Inc.*

    234 F.R.D. 674 (N.D. Cal. Mar. 17, 2006) ...............................................................21

*HI.Q, Inc. v. ZeetoGroup, LLC*,

    2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) ..........................................................7

*In re DMCA 512(h) Subpoena to Dynadot Inc.*,

    No. 3:25-mc-80138-TLT (N.D. Cal. Aug. 12, 2025) ............................................4, 10

*In re DMCA Subpoena to eBay, Inc.*,

    2015 WL 3555270 (S.D. Cal. June 5, 2015).................................................2, 4, 8, 17

*In re DMCA Subpoena to Reddit, Inc.*,

    383 F. Supp. 3d 900 (N.D. Cal. May 17, 2019)..........................................................6

*In re Subpoena of Internet Subscribers of Cox Communications, LLC,*

2025 WL 2371947 (9th Cir. Aug. 15, 2025)....................................................9, 10, 11, 12, 18

*Kirschner v. J.P. Morgan Chase Bank, N.A.,*

2020 WL 7625120 (S.D. Cal. Dec. 21, 2020)...........................................................22, 24

*McCoy v. Southwest Airlines Co.,*

211 F.R.D. 381 (C.D. Cal. Nov. 7, 2002) ...........................................................................4

*Pearl Investments, LLC v. Standard I/O, Inc.,*

257 F.Supp.2d 326 (D. Me. Apr. 23, 2003) ......................................................................15

*Pennwalt Corp. v. Durand-Wayland, Inc.,*

708 F.2d 492 (9th Cir. Dec. 21, 1983) ..............................................................................23

*Ray v. Google LLC,*

2023 WL 7305048, at *1 (N.D. Cal. Nov. 6, 2023), aff'd,

2025 WL 2058822 (9th Cir. July 23, 2025) .......................................................................11

*Recording Indus. Ass'n v. Charter Comms.,*

393 F.3d 771 (8th Cir. Jan. 4, 2005) ...................................................................................8

*Sacks Holdings, Inc. v. Vaidya,*

2024 WL 4730424 (N.D. Cal. Nov. 7, 2024) ..................................................................3, 7

*Safeco Ins. Co. of Am. v. Rawstrom,*

183 F.R.D. 668 (C.D. Cal. Dec. 4, 1998) ............................................................................4

*Shell Offshore Inc. v. Greenpeace, Inc.,*

815 F.3d 623 (9th Cir. Mar. 4, 2016) ................................................................................22

*Slovin v. CallFire, Inc.,*

2017 WL 11549626 (C.D. Cal. Aug. 18, 2017)...................................................................4

*Slovin v. CallFire, Inc.,*

2017 WL 11549627 (C.D. Cal. July 24, 2017) ....................................................................8

*Stebbins v. Alphabet Inc.,*

No. 4:22-cv-00546-JSW (N.D. Cal. Sept. 3, 2025) ..........................................................14

*Stebbins v. Doe et al.*,

    No. 4:25-cv-04499-JSW (N.D. Cal. July 21, 2025).................................................................14

*Stebbins v. Doe*, et al.,

    No. 24-4992 (9th Cir. Oct. 8, 2024).........................................................................................10

*Stebbins v. Doe*, et al.,

    No. 4:25-cv-04499-JSW (N.D. Cal. Aug. 11, 2025) ..................................................................9

*Strike 3 Holdings, LLC v. Doe*,

    2018 WL 10604533 (N.D. Cal. Sept. 14, 2018) ......................................................................20

*Strike 3 Holdings, LLC v. Doe*,

    2018 WL 2371730 (S.D.N.Y. May 23, 2018) ..........................................................................20

*Taylor v. Cnty. of San Bernardino*,

    2024 WL 3915194 (C.D. Cal. May 7, 2024) ..............................................................................4

*Visual Supply Co. v. Cloudflare, Inc.*,

    No. 3:24-mc-80159-SK (N.D. Cal. June 25, 2025) ..............................................................4, 17

*Walker v. Lakewood Condo. Owners Ass'n*,

    186 F.R.D. 584 (C.D. Cal. Jan. 10, 1999)..................................................................................7

**Statutes**

17 U.S.C. § 512(a) ................................................................................................................10, 18

17 U.S.C. § 512(b) ......................................................................................................1, 10, 11, 15

17 U.S.C. § 512(c) ......................................................................................................1, 10, 11, 15

17 U.S.C. § 512(d) .....................................................................................................1, 10, 11, 15

17 U.S.C. § 512(f) .....................................................................................................................18

17 U.S.C. § 512(g)(3)(D)......................................................................................................16, 18

17 U.S.C. § 512(h) ..................................1, 2, 3, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25

17 U.S.C. § 512(h)(2)(C) ...........................................................................................................17

17 U.S.C. § 512(h)(3) .................................................................................................................2

17 U.S.C. § 512(h)(5) .................................................................................................................2

17 U.S.C. § 512(k)(1) ..................................................................................................1, 9, 12, 13, 14

**Rules**

Fed. R. Civ. P. 26(f) .........................................................................................................19

Fed. R. Civ. P. 34 ...............................................................................................................7

Fed. R. Civ. P. 45(d)(2)(B) ....................................................................... 1, 2, 3, 4, 7, 9, 13, 23

Fed. R. Civ. P. 45(e)(1)(A) ................................................................................................21

Fed. R. Civ. P. 45(g) .........................................................................................................22

**Other Authorities**

*Answering Billions of Reporting Queries Each Day with Low Latency*

      Google Research (Oct. 20, 2023) .................................................................................21

Brutlag & Abrams, *Speed Matters*

      Google Research (June 23, 2009) .................................................................................21

Dean & Ghemawat, *MapReduce: Simplified Data Processing on Large Clusters*

      Google Research (2004) ..............................................................................................22

Eric Goldman, *Internet Access Providers Aren't Bound by DMCA Unmasking Subpoenas–In re Cox*,

      Technology & Marketing Law Blog (Aug. 2025) .......................................................15

Ian Carstens, *Outdated United States' Online Copyright Infringement Practices: What We Can Learn*

      *From the International Community*,

      24 San Diego Int'l L.J. 335 (2023) ..............................................................................15

Stephanie Minnock, *Should Copyright Laws Be Able to Keep Up With Online Piracy?*

      12 Colo. Tech. L.J. 523 (2014) ..................................................................................15

U.S. Copyright Office, *Section 512 of Title 17: A Report of the Register of Copyrights*

      (May 21, 2020)...........................................................................................................18

## STATEMENT OF ISSUE TO BE DECIDED

Whether Respondent must search all its systems—including AdSense—that performed functions described in 17 U.S.C. § 512(b), (c) , or (d)  with respect to the alleged infringement at issue, and whether Respondent waived all objections through: (1) failure to serve timely objections under Fed. R. Civ. P. 45(d)(2)(B) ; (2) failure to raise specific objections within the deadline; and (3) serving boilerplate objections that are tantamount to no objections at all.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This motion addresses whether service providers operating integrated platforms may artificially limit DMCA § 512(h) subpoena responses to selected systems while excluding related platforms that facilitate infringer monetization.

Google operates unified subscriber systems across YouTube, AdSense, and other platforms, enabling users to upload infringing content and immediately monetize it through advertising. Yet Google searches only YouTube databases when responding to DMCA subpoenas, categorically excluding AdSense and other integrated systems that contain additional subscriber information.

This practice undermines § 512(h)'s remedial purpose and conflicts with statutory requirements. Under § 512(k)(1)(B) , Google qualifies as a service provider for all platforms it operates. The subpoena seeks "information sufficient to identify" alleged infringers—information that exists across Google's systems but remains hidden through artificially constrained searches.

Google's objections lack merit. Having failed to timely object and having waived objections through delayed, generic responses, Google cannot now limit the subpoena's scope. Moreover, Google's burden claims are contradicted by its practice of immediately producing identical information when served with a third-party subpoena issued pursuant to expedited discovery.

The Court's ruling will establish important precedent for DMCA enforcement against modern integrated platforms. Allowing compartmentalized responses would create significant enforcement gaps, rendering copyright holders unable to pursue remedies against anonymous infringers.

The Court should compel comprehensive subscriber information searches across Google's integrated systems and impose sanctions to deter similar conduct that would render § 512(h) ineffective.

This motion complies with Civil Local Rule 37-1, as demonstrated by the extensive meet-and-confer efforts detailed in the accompanying declaration.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2025, Mr. Gharavi properly served a DMCA subpoena on Respondent seeking basic subscriber information for eight YouTube accounts engaged in alleged copyright infringement. Gharavi Decl. ¶ 4 & Ex. K. The subpoena requested information "sufficient to identify the alleged infringer," including last known address, as established by standing precedent. *See In re DMCA Subpoena to eBay, Inc.*, No. 15CV922-BEN-MDD, 2015 WL 3555270, at *4 (S.D. Cal. June 5, 2015).

Because the subpoena was served June 25, 2025, objections were due July 9. Gharavi Decl. ¶ 4 & Ex. K. Respondent served untimely objections on July 11 (Gharavi Decl. ¶ 7 & Ex. C), produced deficient materials July 18 and July 28 (Gharavi Decl. ¶ 9 & Ex. D; ¶ 12 & Ex. E), and raised additional objections as late as August 22. Gharavi Decl. ¶ 23. Mr. Gharavi attempted to resolve these issues through meet and confer discussions with Respondent's counsel at Perkins Coie LLP. However, Respondent could not be moved from its newest and final objection, ultimately necessitating this motion. Gharavi Decl. ¶ 21.

This motion follows Respondent's systematic refusal to provide complete compliance with the lawfully issued subpoena, despite clear legal obligations under § 512(h) and established precedent defining the scope of required production.

## III.   LEGAL STANDARD

Under the DMCA's streamlined discovery mechanism, qualifying service providers have limited discretion. Upon receipt of a properly issued subpoena, providers "shall expeditiously disclose to the copyright owner . . . the information required by the subpoena." 17 U.S.C. § 512(h)(5). The statutory language requires disclosure of "information sufficient to identify the alleged infringer." 17 U.S.C. § 512(h)(3). This framework creates a presumption favoring disclosure, with narrow exceptions for procedural defects or overbroad requests.

Rule 45 imposes strict timing requirements: written objections must be served before the earlier of the compliance deadline or 14 days after service. Fed. R. Civ. P. 45(d)(2)(B). Courts apply this deadline as a bright-line rule—untimely objections are generally waived regardless of merit. *Sacks Holdings, Inc.*

*v. Vaidya*, No. 24-mc-80197-PHK, 2024 WL 4730424, at *3 (N.D. Cal. Nov. 7, 2024). Courts also require specific objections that address the particular circumstances of each subpoena.

Courts recognize a limited exception for "unusual circumstances" upon a showing of good cause, considering: (1) whether the subpoena is facially overbroad; (2) whether the subpoenaed party acted in good faith; and (3) whether pre-objection communication occurred between counsel. *Id.* at *4. This exception applies only in extraordinary circumstances and does not excuse procedural defects or bad faith conduct.

## IV.    ARGUMENT

### A.  Respondent Waived All Objections Under Rule 45(d)(2)(B)

Respondent's first service of objections was on July 11, 2025—16 days after valid service of process of the subpoena was effected via hand delivery to Respondent's registered agent. Gharavi Decl. ¶ 7 & Ex. C. Rule 45 states that objections to a subpoena must be served the earlier of the compliance deadline or 14 days from service. Fed. R. Civ. P. 45(d)(2)(B); *Sacks Holdings, Inc. v. Vaidya*, 2024 WL 4730424, at *3 ("Failure to timely and properly object to the subpoena generally constitutes a waiver of all grounds for objection, including privilege.").

The 14-day deadline under Rule 45(d)(2)(B) is mandatory and admits no exceptions—particularly for sophisticated corporate entities such as Respondent. The rule's clear language—"must be served"—creates an absolute deadline that, once missed, results in complete waiver of all objection grounds. Here, Respondent missed this deadline by two full days, serving objections on July 11, 2025, when they were due by July 9, 2025. Gharavi Decl. ¶ 7 & Ex. C.

Although the procedural violations alone warrant granting this motion, Mr. Gharavi respectfully requests the Court reach the substantive issues to provide needed clarity on whether service providers may compartmentalize § 512(h) responses based on corporate structure—a question affecting *all* copyright holders seeking to identify anonymous infringers.

### B.  Untimely Objections to Specific Grounds Are Waived

Even when objections are served within the deadline, district courts in this circuit have consistently held that "[f]ailure to serve timely a *particular ground* for an objection waives all ground for *that objection*, including privilege because Rule 45 requires the recipient of a subpoena to raise all

objections at once, rather than in staggered batches, so that discovery does not become a game." *Taylor v. Cnty. of San Bernardino*, No. 5-21-CV-02088-JGB-SHK, 2024 WL 3915194, at *12 (C.D. Cal. May 7, 2024) (cleaned up) (emphasis added) (quoting *McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. Nov. 7, 2002)); *Franco v. Alorica Inc.*, No. 2:20-CV-05035-DOC-KESx, 2021 WL 6104816, at *4 (C.D. Cal. Nov. 5, 2021) ("[Respondent] never raised this [objection] in its written objections or emails to Plaintiff's counsel, thus waiving it."); *Slovin v. CallFire, Inc.*, No. 2:17-mc-00091-DMG-JEM, 2017 WL 11549626, at *1 (C.D. Cal. Aug. 18, 2017) (quoting *Safeco Ins. Co. of Am. v. Rawstrom*,183 F.R.D. 668, 671 (C.D. Cal. Dec. 4, 1998) ("objections not interposed in a timely response may not be held in reserve and interposed after the period allowed").

Respondent's first objection to the production of "last known address" as specified in Mr. Gharavi's subpoena was August 5, 2025—a full 41 days after service of the subpoena, and 27 days after the 14-day objection period specified in Fed. R. Civ. P. 45(d)(2)(B) had elapsed.  Gharavi Decl. ¶ 22 & Ex. A, at 12-13. Respondent claimed that "a service provider's obligation goes no further than the production of a claimed infringing user's email address" under § 512(h) subpoenas. *Id.* As of the filing of this motion, Respondent still has not articulated what caselaw it believes has abrogated *In re DMCA Subpoena to eBay, Inc.*—the standing precedent from which the "last known address" subpoena language was derived. 2015 WL 3555270, at *4.

In fact, this district recently relied upon the very same authority in granting a motion to compel compliance with a § 512(h) subpoena, finding, *inter alia*, production of the "last known address" as "information sufficient to identify the alleged infringer in the meaning of § 512(h))." *In re DMCA 512(h) Subpoena to Dynadot Inc.*, No. 3:25-mc-80138-TLT, Dkt. No. 19, at 5:1-7 (N.D. Cal. Aug. 12, 2025) (quoting *In re DMCA Subpoena to eBay, Inc.*, 2015 WL 3555270, at *4) (internal citations omitted); cf. *Visual Supply Co. v. Cloudflare, Inc.*, No. 3:24-mc-80159-SK, Dkt. No. 18, at 5-6 (N.D. Cal. June 25, 2025)[2] (citing extensively to *In re DMCA Subpoena to eBay, Inc.* as persuasive authority).

Respondent has thus waived this objection.

### C. Respondent's Systematic Use of Boilerplate Objections

---

[2]  This is a Report and Recommendation by Magistrate Judge Kim. Objections were filed on July 9, 2025 (Dkt. No. 20) and are pending before District Judge Orrick. The reasoning remains persuasive authority directly addressing Respondent's arguments.

Respondent's objections served in this matter constitute a nearly identical copy/paste of an objection letter previously served on Mr. Gharavi regarding an entirely unrelated case from five months earlier. *Compare* Gharavi Decl. ¶ 8 & Ex. B *with* Gharavi Decl. ¶ 7 & Ex. C; Figure 1 displaying a table with a side-by-side comparison of the two letters, which clearly demonstrates the nearly identical nature of the objections.

| Objection Section | Letter 1 (Feb. 7, 2025) 3:25-mc-80001-PHK | Letter 2 (July 11, 2025) 4:25-mc-80164-DMR |
|---|---|---|
| **User Notification** | "Google provides its users at least 10 days to object to your request or to inform Google of their intent to file a motion to quash." | "Google provides its users at least 10 days to object to your request or to inform Google of their intent to file a motion to quash." |
| **First Amendment** | "Google objects to the Subpoena to the extent that the Subpoena asks for Google to disclose the identity of Google users who posted certain reviews or certain content, which implicates the First Amendment rights of Google users to engage in anonymous speech." | "Google objects to the Subpoena to the extent that the Subpoena asks for Google to disclose the identity of Google users who posted certain reviews or certain content, which implicates the First Amendment rights of Google users to engage in anonymous speech." |
| **Case Law Citations** | "Glassdoor, Inc. v. Superior Court, 9 Cal. App. 5th 623... Krinsky v. Doe 6, 159 Cal. App. 4th 1154... Digital Music News LLC v. Superior Court..." | "Glassdoor, Inc. v. Superior Court, 9 Cal. App. 5th 623... Krinsky v. Doe 6, 159 Cal. App. 4th 1154... Digital Music News LLC v. Superior Court..." |
| **Place of Production** | "Non-party Google is located in Santa Clara County, California... Google therefore objects to the Subpoena because it designates a place for compliance that is more than 100 miles from its headquarters." | "Non-party Google is located in Santa Clara County, California... Google therefore objects to the Subpoena because it designates a place for compliance that is more than 100 miles from its headquarters." |
| **Closing Language** | "should you wish to seek any judicial relief in connection with this matter, Google requests the opportunity to meet and confer in advance of any such filing." | "should you wish to seek any judicial relief in connection with this matter, Google requests the opportunity to meet and confer in advance of any such filing." |

*Figure 1: Side-by-side comparison of nearly identical boilerplate objections letters.*

These letters were served five months apart in unrelated matters involving different judges, different case scopes, and different procedural circumstances, yet remain substantively identical, demonstrating Respondent's systematic use of template responses regardless of case-specific facts.

The only material change between the letters was one new purported "objection" in the more recent letter—the addition of an "Attorney's Eyes Only" designation. Any attempt by Respondent to argue that this new "objection" supports a conclusion that its objections are not boilerplate would be disingenuous—in fact, it supports the opposite conclusion by demonstrating Respondent's mechanical application of template language without regard to case-specific circumstances.

*Pro Se* **Status Ignored:**

The subpoena served on Respondent clearly reflects that Mr. Gharavi is *pro se*, making any attorney-only restriction impossible to implement. Gharavi Decl. ¶ 4 & Ex. K. Respondent's failure to acknowledge this fundamental procedural limitation further exposes the deficiency of its objection.

**Factual Distinction from Cited Authority:**

The underlying subject matter is neither sensitive nor stigmatizing, and no user came forward to assert First Amendment anonymity rights. This stands in stark contrast to Respondent's cited authority, *In re DMCA Subpoena to Reddit, Inc.*, 383 F. Supp. 3d 900, 916 (N.D. Cal. May 17. 2019), which involved represented parties, active user objections to disclosure, and sensitive content requiring protection—none of which exist here.

**Respondent's Failure to Confirm User Objections:**

Respondent's partial production for all accounts on July 18 and July 28, 2025 implied that no users objected to disclosure. During the August 22, 2025 meet and confer, Mr. Gharavi specifically requested confirmation that all users were notified and that none responded with objections, and counsel committed to providing this confirmation. Gharavi Decl. ¶ 21. However, Respondent has failed to fulfill this commitment, leaving the status of user objections unclear despite its prior partial productions— undermining any basis for anonymity protections. *Id.*

**Respondent's Own Timeline Manipulation:**

Respondent's initial production timeline indicated documents would be produced "after July 29, 2025," exceeding their stated 10-day user notification period. Gharavi Decl. ¶ 17 & Ex. A, at 17. After Mr. Gharavi's repeated inquiries, Respondent advanced the production date to July 18. Gharavi Decl. ¶ 18 & Ex. A, at 16-17. This dramatic timeline shift demonstrates that the original "after July 29" date was arbitrary rather than based on legitimate procedural requirements.

**Attorney's Eyes Only Designation:**

After Mr. Gharavi expressly rejected Respondent's proposed attorney's eyes only designation (Gharavi Decl. ¶ 14 & Ex. A, at 18), Respondent declared without court authorization that the production "is being made subject to an attorney's eyes only designation", constituting a procedural violation imposed without a binding protective order or agreement. Gharavi Decl. ¶ 15 & Ex. D, at 1. This pattern demonstrates Respondent's systematic application of boilerplate objections regardless of:

- Case-specific circumstances (different accounts and availability)
- Procedural status (*pro se* versus represented parties)
- Judicial differences (PHK vs. DMR)
- Factual distinctions (presence or absence of user objections)
- Legal appropriateness of confidentiality demands (attorney's eyes only)
- Timeline manipulation caused by external pressure

Courts consistently hold that nonparty subpoena objections under Rule 45(d)(2)(B) are subject to the same specificity requirements as party objections under Rule 34, forbidding boilerplate or generalized objections. *HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *12 (S.D. Cal. Nov. 29, 2022) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.") (quoting *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584 (C.D. Cal. Jan. 10, 1999)).

Accordingly, Respondent's objections are meritless boilerplate and should be deemed waived and disregarded. Additionally, sanctions are warranted given Respondent's procedural misconduct in unilaterally imposing confidentiality restrictions and to *deter future abuses*.

### D.  No Good Cause Exists for Respondent's Untimely Objections

While a non-party's failure to timely object to a subpoena ordinarily results in waiver of such objections, courts recognize a *limited* exception for unusual circumstances upon a showing of good cause. Such circumstances include: (1) the subpoena is facially overbroad and exceeds fair discovery; (2) the subpoenaed party acts in good faith; and (3) counsel engaged in pre-objection communication regarding subpoena compliance. *Sacks Holdings, Inc. v. Vaidya*, 2024 WL 4730424, at *4.

(1) Here, the subpoena is not overbroad. In fact, its language is mirrored from case law defining

the contours of "information sufficient to identify" under DMCA § 512(h). *In re DMCA Subpoena to eBay*, 2015 WL 3555270, at *4.

(2) Moreover, the subpoenaed party has not acted in good faith, as demonstrated by its inconsistent objections and production responses. For example, Respondent relies on out-of-circuit dicta from a *dissenting* judge taken out of context by misapplying *Recording Indus. Ass'n v. Charter Comms.*, 393 F.3d 771, 786 (8th Cir. Jan. 4, 2005). Respondent's email states directly:

> Note that a service provider's obligation goes **no further than the production of a claimed infringing user's email address**. See Recording Indus. Ass'n v. Charter Communs., Inc. (In re Charter Communs., Inc.), 393 F.3d 771, 786 (8th Cir. 2005) ("Since electronic mail provides the fastest and surest means of contacting individuals alleged to have engaged in digital piracy over the internet, email addresses are a most appropriate form of identification.").

Gharavi Decl. ¶ 22 & Ex. A, at 13 (emphasis added).

(3) Finally, the pre-objection communication factor is unmet. Respondent did not engage in genuine, timely meet-and-confer negotiations. Instead, Respondent ignored multiple meet-and-confer requests, and only agreed after multiple threats of motion practice. Gharavi Decl. ¶ 19 & Ex. A, at 8-12, 17-19. *See also* Gharavi Decl. ¶ 25 & Ex. J, at 4-5 (Newman, Attorney, describing Respondent's pattern of behavior of obstructing compliance with § 512(h) subpoenas by (1) citing to out of circuit dicta taken out of context, and (2) repeatedly ignoring requests to meet and confer). District courts in this circuit take meet-and-confer requirements very seriously, often issuing sanctions or orders to show cause for noncompliance with meet-and-confer obligations. *Slovin v. CallFire, Inc.*, No. 2:17-mc-00091-DMG-JEM, 2017 WL 11549627 (C.D. Cal. July 24, 2017); *Allen v. Cnty. of Lake*, No. 14-CV-03934-THE(DMR), 2016 WL 5930281, at *6 (N.D. Cal. Oct. 12, 2016); *Dominguez v. Ford Motor Co.*, No. 5:21-CV-00226-JWH-SP, 2021 WL 6496838, at *2 (C.D. Cal. Dec. 1, 2021).

Unusual circumstances warranting relief typically involve *incapacitation* or *severe illness* preventing timely objection, none of which apply here. Instead, Respondent's pattern of shifting objections and dilatory conduct undermines any claim of good faith compliance. Such tactics should not be sanctioned with leniency. The Court should reject Respondent's purported good cause and find all objections waived.

### E.  Cox Communications Does Not Excuse Untimely Objections

To the extent that Respondent contends the Court should exercise its discretion to consider

Respondent's untimely objections based on *In re Subpoena of Internet Subscribers of Cox Communications, LLC*, No. 24-3978, 2025 WL 2371947 (9th Cir. Aug. 15, 2025) ("*Cox Communications*"), arguing it constitutes new controlling authority unavailable when objections were initially served, this argument fails for two independent reasons:

(1) The federal rules are unequivocal that failure to timely object under Rule 45(d)(2)(B) results in irrevocable waiver. This includes all grounds of objection, including privilege. As a bright-line rule, the 14-day deadline creates an immediate and permanent bar to late objections. This prohibition on retroactive cure is well established, as courts disfavor retroactive application of new case law or legal standards absent exceptional and unforeseen circumstances. Here, although the subpoena was properly served on June 25, 2025, Respondent delayed objection to production of "last known address" until August 5, 2025—41 days later—well beyond the deadline, and therefore entirely waived the objection.

(2) Even if exceptional circumstances existed (they do not), *Cox Communications* does not constitute a change in law that would excuse Respondent's untimely objections. As explained in detail in Section F below, the case merely reaffirms existing statutory definitions and is factually distinguishable. Therefore, *Cox Communications* provides no basis to consider Respondent's late objections and cannot overcome the bright-line waiver rule applied here.

### F.  Respondent Misinterprets Cox Communications and § 512(k)(1) Corporate Structure and Service Operation

Respondent's position rests on a fundamental misreading of 17 U.S.C. § 512(k)(1) and the Ninth Circuit's decision in *Cox Communications,* 2025 WL 2371947, at *9. Gharavi Decl. ¶ 21 & Ex. A, at 1.

The corporate structure is undisputed: "YouTube, LLC is a subsidiary of Google LLC, which is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc." Corporate Disclosure Statement of YouTube, LLC, *Stebbins v. Doe*, et al., No. 4:25-cv-04499-JSW, Dkt. No. 31 (N.D. Cal. Aug. 11, 2025). More importantly, "Google LLC **operates** the YouTube service." Answering Brief of Google LLC at 1, *David Stebbins v. Google LLC*, No. 25-2007, Dkt. No. 16 (3rd Cir. Aug. 5, 2025) (emphasis added). YouTube, LLC has explicitly acknowledged that a plaintiff "erroneously named YouTube, LLC as a defendant, even though YouTube's parent company, Google LLC, **provides** the YouTube service."  Motion for Clarification of YouTube, LLC at 4 n.3, *Stebbins v. Doe*, et al., No. 24-

4992, Dkt. No. 16.1 (9th Cir. Oct. 8, 2024) (emphasis added). These judicial admissions establish that Google LLC is the proper entity operating the YouTube platform and providing the services at issue.

**Statutory Framework Under § 512(k)(1)**

Section 512(k)(1)(B) defines "service provider" to include both "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). This definition expressly covers Google LLC, which operates the facilities for YouTube's online services. Despite this clear statutory language, Respondent argues YouTube, LLC is the exclusive service provider, asserting Google LLC has no subpoena obligations despite being the admitted operator.

**Cox Communications Does Not Support Respondent's Position**

In *Cox Communications*, the Ninth Circuit addressed a narrow issue: whether a § 512(h) subpoena may issue to a a § 512(a) service provider that did not perform § 512(b), (c), or (d) functions "with respect to the alleged infringement at issue." 2025 WL 2371947, at *9. The court held such subpoenas cannot issue to providers performing only § 512(a) functions regarding the specific infringement, but can issue when providers performed § 512(b), (c), or (d) functions, whether in addition to or instead of § 512(a).

By way of example, this district recently granted a motion to compel compliance with a § 512(h) subpoena by relying upon, *inter alia*, the movant's evidence that the respondent also provided hosting services under § 512(c). The court reasoned, "[Respondent's] connection to material is not 'transient.' For example, [Respondent] provides hosting services, which goes beyond the mere transmission of material." *In re DMCA 512(h) Subpoena to Dynadot Inc.*, No. 3:25-mc-80138-TLT, Dkt. No. 19, at 6:23-25. Had the Ninth Circuit published the *Cox Communications* decision three days prior, the *Dynadot* court could not have relied on that evidence in reaching its conclusion because the evidence proffered did not support a conclusion that Dynadot's hosting services were implicated in the alleged infringement at issue. *Cox Communications*, 2025 WL 2371947, at *9.

However, nowhere in *Cox Communications*—at that pinpoint location or elsewhere—did the Ninth Circuit authorize broad new powers for service providers who performed functions described in § 512(b), (c), or (d), to arbitrarily determine which affiliated or subsidiary entities are subject to § 512(h) subpoenas. Yet, Respondent claims the Ninth Circuit "recently endorsed this fine-grained approach" regarding "limitations, obligations, and protections imposed by the statute." Gharavi Decl. ¶ 21 & Ex. A,

at 2. While the court addressed the statute's various safe harbors, nowhere does it authorize novel limitations on a provider's subpoena obligations stemming from its § 512(b), (c), or (d) functions.

### Respondent's Interpretation Would Undermine the Statutory Scheme

Respondent's position would create an artificial barrier preventing legitimate copyright holders from obtaining identifying information from the entities that actually operate infringing platforms. The *Cox Communications* decision addressed which types of service providers are subject to § 512(h) subpoenas, not which corporate entities within a service provider's structure can avoid compliance obligations. Allowing service providers to shield themselves through corporate formalities would frustrate the DMCA's identification purposes.

Respondent's position seeks to improperly shield Google LLC's systems involved in the alleged infringement by emphasizing corporate formalities that are inconsistent with both statutory intent and YouTube's actual operations. The Court should reject this overreaching interpretation and compel compliance from Google LLC as the admitted operator of the YouTube service.

### G.  Google LLC Qualifies as the Service Provider Under § 512(k)(1)

### Google's Operation of YouTube and Integration with AdSense

"Google operates YouTube, an online service for sharing and watching videos and related content." *Ray v. Google LLC*, No. 23-CV-04222-TSH, 2023 WL 7305048, at *1 (N.D. Cal. Nov. 6, 2023), aff'd, No. 23-3987, 2025 WL 2058822 (9th Cir. July 23, 2025). "YouTube users who upload videos to YouTube and earn sufficient viewership may be eligible for the YouTube Partner Program ('YPP'), through which participants can earn a share of the revenue from third party advertisements shown in connection with videos they post to the service." *Id.* "YPP participants **must create an AdSense account** to receive payment through Google's AdSense program." *Id.* at *2 (emphasis added).

These facts establish that Google LLC operates an integrated system where YouTube content creators receive monetization through Google's AdSense platform—the very mechanism through which copyright infringers profit from unauthorized content.

### Statutory Analysis Under § 512(k)(1)

Section 512(k)(1)(B) defines "service provider" to include "a provider of online services or network access, **or the operator of facilities therefor**." 17 U.S.C. § 512(k)(1)(B) (emphasis

added). Google clearly falls within this definition as both the operator of YouTube's online services and the operator of the integrated facilities (including AdSense) that enable content monetization.

Despite these established facts, Respondent urges the Court to manufacture new law, upending a decade of precedent by granting service providers unprecedented power under § 512(k)(1) to subjectively define the boundaries of their service provider status and arbitrarily limit their § 512(h) obligations. Courts consistently reject such attempts at corporate manipulation to avoid legitimate discovery obligations.

**The Primary Revenue System for Infringement**

Significantly, the primary system through which Respondent compensates copyright infringers on YouTube—enabling them to unlawfully profit from advertising revenue that belongs to copyright holders—is Respondent's own AdSense product. This integrated monetization system directly facilitates and incentivizes copyright infringement by providing financial rewards to infringers.

In his August 5, 2025 correspondence, Mr. Gharavi requested that Respondent certify under penalty of perjury that it had conducted a comprehensive search of all Google products, services, and systems *associated with* the subpoenaed accounts and possessed no additional physical address information beyond what had been produced. Gharavi Decl. ¶ 22 & Ex. A, at 12. Respondent refused to provide such certification. This refusal, combined with the integrated nature of YouTube's monetization through AdSense, establishes a sufficient nexus for discovery purposes. Respondent cannot simultaneously claim AdSense is irrelevant while refusing to certify that AdSense was not used with respect to the alleged infringement.

The Court should hold that Google LLC qualifies as the service provider under § 512(k)(1). Alternatively, if the Court determines YouTube, LLC is the nominal service provider, it should hold that Google LLC and its AdSense product constitute "operator[s] of facilities therefor" under 17 U.S.C. § 512(k)(1)(B).

Under either analysis, the result is identical: Google LLC must search all systems linked to YouTube "with respect to the alleged infringement at issue," including AdSense and related payment systems. *Cox Communications*, 2025 WL 2371947, at *9.

**H.  Respondent's Productions Contradict Its Legal Position**

---

Respondent's initial production on July 18, 2025 was minimal. For each subject account, Respondent produced primarily an email address, a sign-up Internet Protocol (IP) address with date and time, and an unverified date of birth that in many instances appeared facially fictitious. Gharavi Decl. ¶ 10 & Ex. F. This production was accompanied by an export summary marked with: (1) "Service: YouTube and YouTube Music" and (2) "Resource: Basic Subscriber Info," indicating a search limited to YouTube and YouTube Music products exclusively. *Id.*

Consequently, Mr. Gharavi sent a deficiency notice on July 19, 2025, attaching an anonymized sample of Respondent's prior, broader production from unrelated litigation. Gharavi Decl. ¶ 11 & Ex. G; Ex. A, at 14-16. That sample, labeled "GoogleUser.SubscriberInfo.html," is distinguished by an accompanying export summary marked with: (1) "Service: Google Account" and (2) "Resource: Subscriber Info," showing an expanded search to the user's Google LLC account—a far more comprehensive production beyond YouTube, LLC systems. Gharavi Decl. ¶ 33 & Ex. M. Mr. Gharavi's July 19 notice explicitly requested this fuller document along with "last known address" for each account. Gharavi Decl. ¶ 11 & Ex. A, at 14-16. However, Respondent's second production on July 28, 2025 consisted solely of the Google LLC account subscriber information document for each account. Gharavi Decl. ¶ 12. Respondent again failed to produce the "last known address" called for in the subpoena and the July 19 deficiency notice. *Id.*

On August 4, 2025, Mr. Gharavi sent a second deficiency notice emphasizing the absence of physical address data. Gharavi Decl. ¶ 13 & Ex. A, at 13-14. Not until August 5, 2025—41 days post-subpoena service and 27 days after the 14-day objection deadline under Fed. R. Civ. P. 45(d)(2)(B)—did Respondent first object to producing the physical address information. Gharavi Decl. ¶ 22 & Ex. A, at 12-13.

This two-step production, including the latter Google LLC account subscriber data responsive to the § 512(h) subpoena, contradicts Respondent's contention that YouTube, LLC is the sole service provider subject to § 512(k)(1) and that discovery beyond YouTube, LLC is unauthorized under § 512(h). *By its own production*, Respondent implicitly confirms Google LLC as the operator of facilities therefor.

Since acquiring YouTube in November 2006, Respondent has modified YouTube's software such that operating a YouTube channel requires a Google LLC account, making copyright infringement on

YouTube inseparable from Google LLC account use. Additionally, infringers profit from advertising on infringing content by relying upon a Google LLC AdSense account. These facts bring Google LLC's AdSense product squarely within the scope of § 512(k)(1) and § 512(h).

Should Respondent contest *any* aspect of the nexus among:

(1) YouTube, LLC,

(2) Google LLC accounts, and

(3) Google LLC's AdSense product,

Mr. Gharavi respectfully requests leave of the Court to serve **limited** discovery upon Respondent to establish a factual record regarding this threshold issue.

### I.   Respondent's Position Would Nullify § 512(h) Discovery

**The Catch-22 Created by Current Jurisprudence Combined with Respondent's Position**

This district consistently holds that "regular jurisdictional requirements of an application for early discovery apply to copyright cases despite Section 512(h)." *Stebbins v. Alphabet Inc.*, No. 4:22-cv-00546-JSW, Dkt. No. 91, at 2 (N.D. Cal. Sept. 3, 2025) (quoting *Cordova v. 1 Doe*, No. 4:25-CV-05207-DMR, 2025 WL 2262999, at *2 (N.D. Cal. July 11, 2025)). Underscoring this principle's importance, the Court in *Stebbins v. Alphabet Inc.* took the extraordinary step of *sua sponte* reversing itself, stating that "[t]o the extent that the Court's ruling denying Stebbins' Section 512(h) motion in the related case, *Stebbins v. Doe et al.*, No. 25-cv-04499-JSW, Dkt. No. 17, implied that Section 512(h) is a proper tool for early discovery, that ruling was in error." *Id.* at n.1.

In *Cordova*—which the Court in *Stebbins v. Alphabet Inc.* relied upon—the Court denied a plaintiff's *ex parte* application for early discovery to unmask an anonymous YouTube infringer because the "[p]laintiff ha[d] not demonstrated under the first and third Columbia requirements that the court likely has personal jurisdiction over the Doe Defendant." 2025 WL 2262999, at *1. Establishing personal jurisdiction over anonymous defendants on Internet-based platforms is virtually impossible where Doe defendants provide no indication as to where they "reside[] or may be found." *Id.* at *2.

This leaves victims of copyright infringement with only one path to unmasking Doe defendants: § 512(h) subpoenas. The combination of Respondent's restrictive position regarding § 512(h) subpoenas and courts' stringent jurisdictional requirements creates a catch-22 making pursuit of anonymous

infringers impossible. *See* Gharavi Decl. ¶ 25 & Ex. J, at 7-8 (Newman, Attorney, describing this exact catch-22 in a meet and confer with Respondent's "head of copyright").

**Inadequacy of Respondent's Limited Production**

An email address cannot establish personal jurisdiction. A single IP address is equally inadequate. Virtual Private Network (VPN) connections that obfuscate true IP addresses are especially common among infringers. *See* Ian Carstens, *Outdated United States' Online Copyright Infringement Practices: What We Can Learn From the International Community*, 24 San Diego Int'l L.J. 335, 343 (2023) (noting that VPNs are "considered useful to infringers and employed by many who pirate online content" and that there exists "a market for facilitating the 'protection' of the infringer while they engage in piracy"); Stephanie Minnock, *Should Copyright Laws Be Able to Keep Up With Online Piracy?*, 12 Colo. Tech. L.J. 523, 538 (2014) (describing VPNs as providing "tunnels to liability-free infringement" and noting courts have called VPNs "the electronic equivalent to a locked door" (quoting *Pearl Investments, LLC v. Standard I/O, Inc.*, 257 F.Supp.2d 326, 350 (D. Me. Apr. 23, 2003))).

Even without VPN use, infringers may have been traveling when registering accounts, creating false positives regarding residence.

**The Risk of Rendering § 512(h) Ineffective**

If the Court endorses Respondent's position, it would create piracy havens where service providers legally enjoy DMCA safe harbor while eliminating rightsholders' ability to obtain relief. This would spark a race among § 512(b), (c), and (d) service providers to render § 512(h) a nullity.

To achieve this, service providers would quickly strip user-identifying data from their content-hosting product, move that data to a new shell product, then link the two products using randomly generated "Universally Unique Identifiers" (UUIDs). When served with § 512(h) subpoenas, providers would produce only meaningless UUIDs. Rightsholders would abandon § 512(h) subpoenas, realizing courts have determined service providers need not fulfill DMCA obligations.

This outcome is not speculative. Despite irreparable harm to content creators and consumers, § 512(h)'s elimination is actively sought by many, including legal scholars. *See* Eric Goldman, *Internet Access Providers Aren't Bound by DMCA Unmasking Subpoenas–In re Cox*, Technology & Marketing Law Blog (Aug. 2025), https://blog.ericgoldman.org/archives/2025/08/internet-access-providers-arent-

bound-by-dmca-unmasking-subpoenas-in-re-cox.htm (last visited Sept. 21, 2025) (Goldman, Associate Dean and Professor at Santa Clara University School of Law, advocating to "**strike down the entire 512(h) mechanism or repeal it**") (emphasis added).

The Court should reject Respondent's position to preserve the viability of § 512(h) as an essential tool for copyright enforcement in the digital age.

### J.  Respondent's Service of Process Argument Lacks Merit

### Respondent's Textual Argument Fails

Respondent argues that Congress never intended parties to initiate litigation using information obtained through § 512(h) subpoenas.[3] This interpretation rests entirely on comparing § 512(h) to § 512(g)(3)(D), which requires counter notification issuers to state they will "accept service of process." Because § 512(h) contains no such language, Respondent extrapolates that Congress intended to prohibit all litigation based on § 512(h) subpoenas.

This argument fails on multiple grounds. First, the two provisions address fundamentally different scenarios. Section 512(g)(3)(D) governs counter-claimants who affirmatively assert they are willing to be sued over their allegedly infringing activity. Requiring such parties to accept service of process is logical because they are stepping forward and challenging the takedown. Section 512(h), by contrast, governs copyright holders seeking to identify anonymous infringers who have not stepped forward and who by definition have not agreed to accept service. The absence of identical language reflects different procedural contexts, not a prohibition on filing lawsuits.

Second, Respondent cites no case, treatise, commentary, or legislative history supporting this interpretation—*because none exists*. This position defies both legal logic and common sense, as demonstrated by consistent judicial interpretation recognizing § 512(h)'s litigation purpose.

### The Plain Language and Purpose of § 512(h)

Section 512(h) is titled "Subpoena to identify infringer" and requires a sworn declaration that "the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title." 17 U.S.C. §

---

[3] During the August 22, 2025 meet and confer, Respondent articulated this position, arguing that Congress's inclusion of service-of-process language in § 512(g)(3)(D) but not § 512(h) demonstrates Congressional intent to prohibit using § 512(h) information for litigation. Gharavi Decl. ¶ 23 & Ex. N.

MOTION TO COMPEL COMPLIANCE WITH SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 3:25-mc-80164-WHO

512(h)(2)(C). This permissive language authorizes obtaining infringers' identities for protecting copyright rights through enforcement action—*not* merely for abstract knowledge. Nothing in § 512(h) prohibits using subpoenaed information to file lawsuits, effectuate service of process, or pursue legal remedies. Litigation is the primary mechanism through which copyright holders protect their rights under Title 17.

### Recent Judicial Confirmation of § 512(h)'s Litigation Purpose

This district recently addressed the exact theory Respondent now advances. In *Visual Supply Co. v. Cloudflare, Inc.*, No. 3:24-mc-80159-SK, Dkt. No. 18, at 6-8, the respondent moved to quash DMCA subpoenas after the copyright holder used the subpoenaed information to file a lawsuit and serve process—precisely what Respondent claims is improper here.

Magistrate Judge Kim squarely held that § 512(h) subpoenas may properly be used to obtain information necessary to initiate litigation and effectuate service of process. When the respondent argued that the subpoenas violated § 512(h)(2)(C) because the copyright holder also filed related non-copyright claims, the court rejected this cramped interpretation, reasoning that the copyright holder "did use [the] subpoenas to obtain information necessary to pursue the copyright claims of its customers — *Khimji's identity*." *Id.* at 8 (emphasis added).

Most significantly for the instant case, the court held: "That the same information is also relevant to VSCO's trademark claims, and that VSCO chose to pursue its trademark claims first, does not render the subpoenas properly sought as invalid." *Id.* The court further noted that "In the absence of any authority construing the statutory language to penalize the use of information obtained from properly issued subpoenas to ultimately enforce [related] claims, the Court declines to do so here." *Id.*

This interpretation aligns with earlier precedent from this circuit. In *In re DMCA Subpoena to eBay, Inc.*, 2015 WL 3555270, at *4, the court enforced a § 512(h) subpoena requiring production of "the name, last known address, last known telephone number, any electronic mail addresses associated with each account . . . and any logs of Internet Protocol addresses used to access the subject accounts." The court made no distinction between information suitable for "identification purposes only" versus information necessary for filing lawsuits—because the entire purpose of identification *is* to enable enforcement through litigation.

**The Copyright Office Recognizes § 512(h)'s Essential Litigation Function**

The U.S. Copyright Office—the authoritative federal agency on copyright matters—has averred that § 512(h) serves an essential enforcement function, though "rightsholders uniformly decry the current (lack of) utility." U.S. Copyright Office, *Section 512 of Title 17: A Report of the Register of Copyrights*, 164 (May 21, 2020). The Office specifically noted that "an inability to uncover the identity of a user behind an IP address, information that is likely to reside nowhere else than with the ISP, dooms a plaintiff's claims, since a plaintiff's inability to identify [a] defendant makes effectuating service or *prosecuting the case* impossible." *Id.* at 167 (cleaned up) (emphasis added).

The Copyright Office's explicit reference to *prosecuting the case* confirms what courts have repeatedly recognized: § 512(h) exists to enable copyright holders to file lawsuits against anonymous infringers. The Office emphasized that "it has long been a fundamental axiom of U.S. jurisprudence that an effective remedy must be available for the vindication of a right that has been transgressed." *Id.* This principle makes information such as "last known address" particularly crucial within § 512(h)'s scope, especially given that *Cox Communications* has now foreclosed downstream identification from § 512(a) service providers. 2025 WL 2371947, at *11.

**The Absurd Consequences of Respondent's Position**

Respondent's interpretation would render § 512(h) entirely meaningless. If copyright holders could identify anonymous infringers but could not use that identifying information to file lawsuits or effectuate service of process, the entire identification mechanism would serve no purpose. Copyright holders would possess the names and addresses of infringers but would be legally prohibited from using that information to vindicate their rights through the courts.

This interpretation would create a bizarre statutory scheme where only counter-claimants under § 512(g)(3)(D)—who explicitly accept service of process—could ever be sued for copyright infringement, while anonymous infringers who never step forward would remain immune from legal action despite being identified. Under Respondent's logic, copyright holders could pursue no enforcement action against infringers who remain anonymous, could not seek damages for knowing material misrepresentations under § 512(f) unless the misrepresenting party first filed a counter-notice accepting service, and indeed could pursue no DMCA-related litigation whatsoever except against the narrow

category of parties who voluntarily submitted to jurisdiction through counter-notices. Congress could not have intended such an outcome.

The Court should reject Respondent's unprecedented attempt to prohibit the very purpose for which § 512(h) exists and should instead uphold the statute's clear function: enabling copyright holders to identify infringers for legitimate legal proceedings. Anything less would render meaningless Congress's carefully crafted balance between service provider safe harbors and copyright holder remedies.

### K. Respondent's Undue Burden Claim Contradicts Its Own Practice

**Respondent's Contradictory Position on Multi-Product Searches**

During conferral with counsel on August 22, 2025—58 days after service of the instant subpoena—Respondent proffered a brand-new objection: Google is a very large and diverse service provider, and if they took the view that any legal obligation imposed on one product automatically imposed obligations on all of its other products, it would be very difficult to do business, and that they don't want to open that can of worms. Gharavi Decl. ¶ 23 & Ex. N.

Assuming, *arguendo*, this position is supported by caselaw (it is not), Respondent has already opened that can of worms.

**Respondent's Routine Compliance with Equivalent Third-Party Subpoenas**

When Respondent receives third-party subpoenas ordering production of the same information at issue in the instant motion (i.e., "last known address" of alleged copyright infringers on YouTube), Respondent voluntarily complies with such subpoenas and produces responsive material from its various products including AdSense, so long as the subpoena is issued pursuant to an order granting expedited discovery prior to a Rule 26(f) conference. Gharavi Decl. ¶ 24 & Ex. H, at 16 (production of billing address from Google LLC's "AdSense" product regarding alleged infringement on YouTube, LLC); *Cordova v. Huneault*, No. 5:25-cv-04685-VKD, Dkt. No. 26, at 5:5-7 (N.D. Cal. Sept. 12, 2025) ("On August 25, 2025, in response to Mr. Cordova's subpoena [seeking to identify an infringer on YouTube], Google identified this **mailing address** as associated with defendants' **Google AdSense** billing profile.") (emphasis added); Gharavi Decl. ¶ 25 & Ex. I (Newman, attorney commentary: "If you recall, we got an ex parte order allowing us to serve discovery before the Rule 26 Conference. So we

served the subpoena on Google and they actually responded yesterday **without any pushback**. They gave me the information on who owns the channel.") (emphasis added).

### Respondent's Obstruction of Equivalent § 512(h) Subpoenas

However, when Respondent receives equivalent subpoenas under § 512(h), such as the instant one, Respondent complains it is unduly burdensome and obstructs full compliance on this basis. *See* Gharavi Decl. ¶ 25 & Ex. J, at 3-4 (Newman, attorney commentary describing Respondent's inadequate § 512(h) productions: "I get the documents. It's like useless nonsense. They don't tell you the people's name. They don't tell you the people's address. You get like an email address. Yippity doo. Like I already have the guy's email address, so that doesn't really help. […] You say that you conducted a diligent search but you won't give me anything. And, it says you failed to produce the name and address of the subscriber. […] This is now a pattern. In two different 512s, you guys made the same nonsensical objections.").

### Legal Principles Governing Undue Burden Objections

"A **party** lacks standing to quash a subpoena on grounds that it is ... unduly burdensome on a **third party**." *Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*, No. ED CV 15-979-JGB (SPx), 2016 WL 7486606, at *3 (C.D. Cal. Oct. 27, 2016) (emphasis added). This is because a subpoena issued to a **third party** "does not obligate [**a party**] to do or produce anything." *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-02019-YGR (EDL), 2018 WL 10604533, at *2 (N.D. Cal. Sept. 14, 2018) (quoting *Strike 3 Holdings, LLC v. Doe*, 2018 WL 2371730, at *2 (S.D.N.Y. May 23, 2018)).

### The Illogical Nature of Respondent's Position

Conversely, a third party bears no burden in *obtaining a subpoena*. Therefore, as a threshold matter, the determination as to whether or not production is unduly burdensome cannot turn on the subpoena's *issuance mechanism*. It would be contrary to both law and logic to hold that a **third party** can maintain contradictory positions on whether production for *equivalent subpoenas* is unduly burdensome based on the burden undertaken by the **party** in obtaining the subpoena.

Whether pursuant to § 512(h) or through an order granting expedited discovery, the burden of production on the third party is exactly the same. The information requested, the search required, and the production demanded are identical in both scenarios.

Therefore, the Court should deem waived any objection on the basis that full compliance with the

instant subpoena is unduly burdensome. Respondent cannot claim undue burden for § 512(h) subpoenas while routinely complying with identical subpoenas through other procedural mechanisms.

### L.  Respondent's Technical Capabilities Belie Its Burden Claims

### Legal Standard and Precedent

A person responding to a subpoena must produce documents as they are kept in the ordinary course of business. Fed. R. Civ. P. 45(e)(1)(A). As evidenced by Respondent's voluntary compliance with equivalent subpoenas issued through expedited discovery orders, Respondent clearly maintains the requested information in its ordinary course of business. Gharavi Decl. ¶ 25 & Ex. I.

Importantly, at least one court in this district has rejected Respondent's undue burden objections even when production required *eight* full-time engineer-days. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. Mar. 17, 2006) ("the Court does not find that the technical burden of production excuses Google from complying with the subpoena"). Here, by contrast, Mr. Gharavi seeks only basic subscriber information for eight accounts—a mere rounding error compared to the *Gonzales* burden.

### Google's Corporate Philosophy: Speed as Competitive Advantage

Respondent has built its entire corporate identity around the principle that "speed matters" and maintaining "speed as a competitive advantage." Brutlag & Abrams, *Speed Matters*, Google Research (June 23, 2009), https://research.googleblog.com/2009/06/speed-matters.html. Their research revealed that even 100-400 millisecond delays cause measurable user engagement drops (-0.2% to -0.6%), concluding that "a daily impact of 0.5% is of real consequence at the scale of Google web search." *Id.*

This corporate philosophy—that milliseconds matter in search performance—directly contradicts claims that searching integrated databases for eight user accounts poses undue burden.

### Google's Demonstrated Technical Excellence

Respondent's internal systems demonstrate massive-scale search capabilities that dwarf the instant request: They processes "billions of reporting queries each day with low latency," with parallelized queries responding "in a matter of a few milliseconds" across massive datasets. *Answering Billions of Reporting Queries Each Day with Low Latency*, Google Research (Oct. 20, 2023), https://research.google/blog/answering-billions-of-reporting-queries-each-day-with-low-latency/.

Respondent quite literally *invented* "MapReduce" more than 20 years ago, which supported

distributed, Internet-scale search. Dean & Ghemawat, *MapReduce: Simplified Data Processing on Large Clusters*, Google Research (2004), https://research.google.com/archive/mapreduce-osdi04.pdf. These innovations represent core competencies in exactly the type of cross-system search Respondent now claims would be unduly burdensome.

**The Scale Contradiction**

This presents a significant inconsistency. Respondent handles billions of daily queries across distributed systems in milliseconds, yet claims searching eight user accounts within a small handful of its own internal, integrated databases poses undue burden. Respondent processes queries at a scale approximately 125 million times larger than this request on a daily basis.

Respondent cannot credibly maintain both that it is the world's premier search technology company and that searching its own account databases for eight users exceeds reasonable technical capabilities. The company's documented infrastructure, corporate culture, and daily operational scale conclusively demonstrate that this request falls well within established competencies.

The Court should reject Respondent's undue burden objection as fundamentally inconsistent with its technical capabilities and business operations.

**M. Sanctions Are Warranted for Discovery Violations**

A court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it. Fed. R. Civ. P. 45(g).

"A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce [a party] into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'" *Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 20-CV-01712-LAB-JLB, 2020 WL 7625120, at *4 (S.D. Cal. Dec. 21, 2020) (alteration in original) (quoting *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. Mar. 4, 2016)).

"In a civil contempt action, the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* (quoting *FTC v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. Apr. 1, 2004)).

"[A] subpoena *duces tecum* is itself a court order, and noncompliance may warrant contempt

sanctions." *Id.* (alteration in original) (quoting *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. Dec. 21, 1983)).

### Clear and Convincing Evidence of Violation

Mr. Gharavi has established by clear and convincing evidence that Respondent violated the specific and definite order embodied in the subpoena. Respondent's violations include:

1. Complete failure to produce "last known address" as explicitly specified in the subpoena, despite maintaining such information in the ordinary course of business and producing it in response to equivalent non-§ 512(h) subpoenas

2. Untimely objections served 41 days after service—nearly three times beyond the mandatory 14-day deadline under Fed. R. Civ. P. 45(d)(2)(B)—constituting waiver of all objections

3. Unilateral imposition of unauthorized confidentiality restrictions after Mr. Gharavi's explicit rejection, violating procedural requirements without court authorization

4. Systematic use of boilerplate objections identical to those used in unrelated matters five months earlier, demonstrating bad faith resistance to legitimate discovery

5. Contradictory positions on burden and capability depending on the procedural mechanism for subpoena issuance

### Timeline of Delayed Compliance

Respondent's conduct demonstrates a deliberate pattern designed to frustrate legitimate discovery. The timeline reveals systematic delay:

- **June 25, 2025:** Subpoena served
- **July 9, 2025:** 14-day objection deadline expired with no objections
- **July 18, 2025:** Partial, deficient production
- **August 5, 2025:** 41 days post-service, new objection raised via email
- **August 15, 2025:** 51 days post-service, new objections raised during meet-and-confer
- **August 22, 2025:** 58 days post-service, new objections raised during meet-and-confer

This conduct has forced Mr. Gharavi to expend significant resources seeking compliance with a straightforward subpoena for basic subscriber information.

Respondent's resistance is inconsistent with its practice of complying immediately with identical

requests through other procedural mechanisms, undermining the validity of its delay and burden objections. Gharavi Decl. ¶ 25 & Ex. I. Respondent's discriminatory compliance pattern transforms this from a mere discovery dispute into systematic abuse of the DMCA enforcement mechanism.

**Sanctions Are Necessary for Coercion and Deterrence**

Both purposes of civil contempt are served here: coercing Respondent's compliance with its clear legal obligations and compensating Mr. Gharavi for losses from Respondent's delays and incomplete compliance. Moreover, sanctions serve the broader policy goal of deterring similar evasive conduct that would render § 512(h) meaningless.

Respondent's revolving door of explanations for noncompliance fails to provide adequate justification. The information is maintained in the ordinary course of business and has been produced under similar procedural mechanisms in comparable circumstances.

**Alternative Request**

Should the Court reach a determination that a sanctions request is premature, Mr. Gharavi respectfully requests the Court issue an Order to Show Cause why contempt sanctions should not issue against Respondent, consistent with the approach in *Kirschner*, 2020 WL 7625120, at *4. Such an order would provide Respondent with an opportunity to explain its conduct while preserving the Court's authority to impose appropriate sanctions.

## V.    CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Mr. Gharavi respectfully requests that the Court enter an order:

1. **COMPELLING** Respondent Google LLC to conduct a comprehensive search of all systems that contain, contained, or maintain subscriber identifying information for the YouTube accounts identified in the subpoena, including but not limited to systems used for account authentication, content monetization, payment processing, and billing (such as AdSense and Google Account systems), and to produce within fourteen (14) days of the Court's order all responsive information required by the subpoena that has not yet been provided:

   a.  Last known addresses;

   b.  Last known telephone numbers;

   c.  Any additional email addresses not already produced;

d.  Complete access logs showing all IP addresses used to access each account during the requested three-year period (excluding IP logs already produced);

2. **REQUIRING** Respondent to accompany its production with a declaration under penalty of perjury from a knowledgeable Google LLC employee with personal knowledge of the company's data systems and search procedures, certifying:

a.  The completeness and accuracy of the production;

b.  That all reasonably accessible systems containing subscriber information related to the specified YouTube accounts have been searched;

c.  That all responsive information has been produced or, if not produced, explaining the specific technical or legal basis for non-production;

d.  The specific systems and databases searched, including but not limited to YouTube, Google Account, AdSense, and payment processing systems;

3. **DECLARING** that Respondent's interpretation limiting its search obligations to YouTube-specific databases is contrary to 17 U.S.C. § 512(h) and that Google LLC, as the service provider and operator of facilities for YouTube, must search all systems with responsive information;

4. **DECLARING** that Respondent's objections were untimely, boilerplate, and waived;

5. **ORDERING** removal of any confidentiality restrictions imposed without court authority;

6. **IMPOSING** monetary sanctions against Respondent for its pattern of discovery violations, including Mr. Gharavi's reasonable costs incurred in bringing this motion; and

7. **GRANTING** such other relief as the Court deems just and proper.

Dated: October 15, 2025

Respectfully submitted,

/s/ Nima Gharavi
Nima Gharavi

Movant, *Pro Se*

## MEET-AND-CONFER CERTIFICATION

Movant certifies that lead counsel for the parties met and conferred by videoconference on three occasions to attempt to resolve this discovery dispute informally: August 15, 2025, August 22, 2025, and October 15, 2025. Despite good faith efforts to resolve the dispute, the parties were unable to reach agreement.

Dated: October 15, 2025

/s/ Nima Gharavi
Nima Gharavi

Movant, *Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2025, I electronically filed the foregoing Motion to Compel Compliance with DMCA Subpoena, supporting Declaration of Nima Gharavi, and Proposed Order using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: October 15, 2025

/s/ Nima Gharavi

Nima Gharavi

Movant, *Pro Se*

MOTION TO COMPEL COMPLIANCE WITH SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 3:25-mc-80164-WHO