Elise Edlin, Bar No. 293756
EEdlin@perkinscoie.com
Torryn T. Rodgers, Bar No. 319126
TRodgers@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

Todd M. Hinnen, *pro hac* forthcoming
THinnen@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Respondent*,
Google LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE DMCA 512(h) SUBPOENA TO GOOGLE LLC, | Case No. 3:25-mc-80164-WHO<br><br>RESPONDENT GOOGLE LLC'S OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH DMCA SUBPOENA<br><br>Judge:     William H. Orrick<br>Date:      December 3, 2025<br>Time:      2:00 p.m.<br>Courtroom: 2 |

## I.    INTRODUCTION

*Pro se* Movant, Nima Gharavi seeks to stretch Section 512(h) beyond its terms. He availed himself of the Digital Millenium Copyright Act's ("**DMCA**") notice and takedown remedy, and Google LLC ("**Google**") promptly removed the allegedly infringing videos from its platform on YouTube. Mr. Gharavi then obtained a subpoena issued under Section 512(h) of the DMCA (the "**Subpoena**"), which sought identifying information for the YouTube users who posted the allegedly infringing videos.[1] Google has provided Mr. Gharavi with all of the requested YouTube account records. Unsatisfied with the YouTube account information, Mr. Gharavi contends—contrary to the plain language of Section 512(h) and the consistent interpretation by every Circuit Court to consider it—that Google must additionally disclose a user's identifying information from any and all *other* Google services that perform other functions not contemplated by Section 512(h) (if the user uses another Google service). Specifically, Mr. Gharavi seeks identifying user data from Google AdSense for the @WiscoWrestler YouTube account, including:

- Google AdSense ID(s) linked to the YouTube monetization;

- Physical mailing address(es) linked to the AdSense account;

- All YouTube channels that are or have been linked to the same AdSense account(s); and

- Any Multi-Channel Network (MCN) affiliation information, including the name of the MCN, date of integration, and contact details.[2]

ECF No. 3-1 at 30[3] (Gharavi Decl. Ex. A) (August 4, 2025 email from Mr. Gharavi to Google's legal support stating this is the "one final piece of information needed to fully satisfy the subpoena

---

[1] The Subpoena requests "the name, last known address, last known telephone number, any electronic mail addresses associated with each [listed YouTube] account from three (3) years to the date of production and any logs of Internet Protocol addresses used to access the subject account(s) from three (3) years to the date of production." ECF No. 2 at 2.
[2] Mr. Gharavi recognizes that even among YouTube users seeking to monetize their content, many do not have their own AdSense account, but instead rely on the AdSense account of a third-party Multi-Channel Network ("**MCN**"), which has its own AdSense account. The mailing address of a third party MCN (stored by AdSense, a separate Google service) is not information disclosable pursuant to a 512(h) subpoena (and, in fact, is not requested by the Subpoena (ECF No. 2 at 2)) as it is not "information sufficient to identify" the alleged infringer.
[3] For clarity, Google's pin cites to Mr. Gharavi's Motion refer to the ECF-stamped page numbering in his originally filed Motion (ECF No. 3) which has since been re-filed and re-noticed (ECF No. 14).

1   requirements" and that "[t]his information would complete the address and identifying information
2   requirements specified in the subpoena's Attachment A").

3       As the statutory language plainly indicates, and as several Circuit Courts have held, a
4   Section 512(h) subpoena does not extend to a service provider (here AdSense), that does not store,
5   host, or maintain the allegedly infringing content. Accordingly, Mr. Gharavi's Motion should be
6   denied and the Subpoena should be quashed to the extent it purports to require more than the
7   disclosure of identifying information collected by YouTube—the service on which the allegedly
8   infringing content appeared.

9       Mr. Gharavi also seeks sanctions against Google, alleges waiver of any objection to the
10  Subpoena, requests leave to take additional discovery of Google, and fills most of his 25-page
11  Motion (and over 100-pages of accompanying exhibits) with strained policy arguments about "The
12  Catch-22 Created by Current Jurisprudence." *See e.g.*, ECF No. 3 at 22. None of these claims or
13  arguments were raised in any of the parties' meet and confer sessions. To the extent that the Court
14  does not strike Mr. Gharavi's additional claims and arguments, Google reserves its right to respond
15  without waiver, and respectfully requests two weeks to respond to these frivolous (and previously
16  unnoticed) issues.[4]

17  **II.    PROCEDURAL BACKGROUND**

18      Between June 25, 2025 and August 25, 2025, Mr. Gharavi and Google were in regular
19  contact and cooperated amicably and in good faith in attempt to avoid burdening the Court with
20  Mr. Gharavi's requests relating to his Subpoena. *See generally* ECF No. 3-1; ECF No. 9-1
21  (Declaration of Elise Edlin in Support of Google's Motion to Strike ("**Edlin Decl.**") ¶¶ 2–4). Over
22  the course of that time, and in the spirit of cooperation, Google provided Mr. Gharavi with user
23  information responsive to the Subpoena, and—recognizing his *pro se* status—regularly engaged
24  with Mr. Gharavi about its scope. ECF No. 9-1 (Edlin Decl. ¶¶ 2–3). On August 22, 2025, in what
25

26  [4] Mr. Gharavi's assertion in his Opposition to Google's Motion to Strike (ECF No. 10) that Google
27  suffers no prejudice in having only one week to respond to a motion that took him almost six-weeks to file and serve without notice because Perkins Coie "has vast resources and regularly handles complex litigation," is absurd. *Id.* at 8. Google should not have to expend resources defending itself
28  against Mr. Gharavi's improper Motion that is 5-times any Judge's page limit (including that of this Court), regardless of the size of its outside counsel's law firm.

turned out to be the parties' final meet and confer prior to Mr. Gharavi's filing of this Motion, the parties discussed the requirements of Magistrate Judge Ryu's Standing Order and the five-day time limit within which to file, post-meet and confer. *Id.* at ¶ 3. The parties agreed and understood that timeline would not apply if Mr. Gharavi declined consent to Magistrate jurisdiction and the matter were consequently reassigned to a District Court Judge. *Id.* Mr. Gharavi indicated to Google that he may decline consent to Magistrate jurisdiction and move to compel further responses to the Subpoena before an Article III Judge. *Id.* After Google followed up on August 25 to detail in writing the legal basis for its arguments, Mr. Gharavi ***did not*** file the form to decline Magistrate jurisdiction. *Id.* at ¶ 4. Instead, he stayed silent for almost six weeks.

Then, on October 2, 2025, with no notice to Google or its counsel, Mr. Gharavi served Google's formal agent for process and filed a nearly 150-page Motion to Compel raising a host of issues, on most of which the parties have never met and conferred, followed by the form declining consent to Magistrate jurisdiction. *See* ECF Nos. 3, 5. A week later, shortly after Google's outside counsel first received the Motion, Google requested a reasonable extension (extending the deadline to two weeks from receipt rather than service). ECF No. 9-1 (Edlin Decl. ¶ 6). Mr. Gharavi refused. *Id.* Even after Google's counsel explained that this would allow the Court time to assign a Judge and proceed under the relevant rules, Mr. Gharavi continued to refuse to agree to an extension. *Id.* On Monday, October 13, Google filed a Motion to Strike Movant's Motion to Compel Compliance with DMCA Subpoena, or in the alternative, request for a brief extension to respond so that a Judge could be appointed and the parties could proceed according to that Judge's rules. ECF No. 9. On October 15, the matter was assigned to Judge Orrick. ECF No. 13.

The procedural deficiencies of Mr. Gharavi's Motion are addressed in Google's Motion to Strike and extension request (ECF No. 9) and do not bear repeating here. However, because the Motion to Strike will not be ruled on before the October 16, 2025 deadline to respond here, Google submits this brief substantive opposition to Gharavi's single outstanding request under the Subpoena and his additional allegations of sanctions out of an abundance of caution and to protect its rights and preserve its arguments for adjudication under Judge Orrick's discovery rules.

### III.    ARGUMENT

Congress created an unusual remedy in Section 512(h) of the DMCA by providing for the issuance of a subpoena unattached to any pending case or controversy. In so doing, Congress sought to balance several competing interests, drawing fine-grained distinctions among service providers based on the function they performed with respect to the alleged copyright infringement and requiring providers performing certain functions to disclose limited information identifying their users to the extent such information was available to them. *See e.g.*, *In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th 1056, 1067 (9th Cir. 2025) ("*Cox*"). As courts have subsequently observed, Section 512 is not and was not intended to be a panacea that provides a remedy to every putative copyright holder. *See id.*; *see also Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233 (D.C. Cir. 2003) ("*Verizon*") (limiting reach of 512(h) subpoenas "only to [internet service providers] engaged in storing on its servers material that is infringing or the subject of infringing activity.").

### 1.    Mr. Gharavi's request for AdSense user data reaches beyond the scope of Section 512(h) and should be denied.

A 512(h) subpoena only properly compels service providers upon whose systems allegedly infringing material resides or is stored to disclose identifying information. YouTube, the service provider upon whose systems the allegedly infringing material was stored in this case, has disclosed the basic subscriber information used by YouTube to identity its users associated with the YouTube accounts that posted the allegedly infringing videos.

Mr. Gharavi now impermissibly seeks to use the 512(h) Subpoena to compel AdSense, a different service provider upon whose systems the material was *not* stored, to disclose additional information. But Congress determined the reach of Section 512(h). Courts—including the Ninth Circuit—have confirmed it. Mr. Gharavi cannot unilaterally expand it. Accordingly, the portion of the Subpoena that purports to compel AdSense to disclose user information must be quashed. A 512(h) subpoena:

> shall authorize and order **the service provider receiving [a notification under Section 512(c)(3)(A)] and the subpoena** to expeditiously disclose to the copyright owner **... information sufficient to identify the alleged infringer** of the material

described in the notification *to the extent such information is available to the service provider*.

§ 512(h)(3) (emphasis added). A copyright owner can submit a 512(c)(3)(A) notification only to a provider that stored the allegedly infringing material on its systems. *See Cox*, 148 F.4th at 1067 ("without an effective (c)(3)(A) notification, a copyright holder cannot obtain a valid § 512(h) subpoena"); *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777 (8th Cir. 2005) ("*Charter*") ("§ 512(h) is structurally linked to the storage functions of an ISP"); *Verizon*, 351 F.3d at 1237 ("§ 512(h) applies to an ISP storing infringing material on its servers in any capacity"). The Ninth Circuit recently joined the DC and Eighth Circuits (the only other circuit courts to have addressed the issue), holding that the proper reach of a 512(h) subpoena depends on the "role" or "function" played by the service provider "with respect to the infringement at issue." *Cox*, 148 F.4th at 1068–69; *Charter*, 393 F.3d at 776–77 (focusing on the "function" played by the service provider); *Verizon*, 351 F.3d at 1237 (same). Because AdSense does not perform the function of storing the allegedly infringing content, it cannot receive a 512(c)(3)(A) notification and therefore cannot be compelled by a Section 512(h) subpoena to disclose user information.

Like Cox Communications and Verizon, Google provides a wide variety of different products and services to its users. As the courts in *Cox* and *Verizon* held, however, a 512(h) subpoena only compels a company like Cox Communications, Verizon, or Google to disclose user information when, and to the extent, it is performing the function of storing the infringing material on its services. *See Cox*, 148 F.4th at 1067; *Verizon*, 351 F.3d at 1236-37 ("the subpoena power of § 512(h) applies only to ISPs engaged in storing copyrighted material")*.* "What matters [in determining the scope of a 512(h) subpoena] is the function performed with respect to the alleged infringement at issue." *Cox*, 148 F.4th*.* at 1067. Unlike YouTube, AdSense is not a content hosting service.

Users use AdSense to place ads and earn money from their online content. *See* Declaration of Meghan Schramm ("**Schramm Decl.**") ¶ 8. AdSense is an independent service, subject to its own Program Policies and Terms and Conditions. *See id.* A user can have a YouTube channel without having an AdSense account or, conversely, an AdSense account without having a YouTube

channel. Schramm Decl. ¶¶5–6. In fact, AdSense account holders can use AdSense to generate revenue from any website hosting a user's content, not just YouTube or Google services. *Id.* at ¶ 7. AdSense is a distinct service that performs a different function, a function that does not involve storage of the allegedly infringing material and, therefore, a function that a 512(h) subpoena does not reach. As the Courts in *Cox*, *Verizon*, and *Charter* held, Section 512(h) compels only a service provider that stores the allegedly infringing material to disclose user information; it does not compel the broader corporate entity that may maintain information regarding the user as a result of its many other products and services to disclose all such information to the copyright holder. YouTube cannot be required to disclose information regarding users of Google's other products and services simply because Google, like Verizon and Cox, offers users many different products and services. To the extent the Subpoena purports to compel the disclosure of AdSense data it must be quashed.

Mr. Gharavi complains that unless Google discloses its users' AdSense data, in addition to the information that identifies a YouTube user, Section 512(h) will not have provided him with an effective remedy.[5] That is not surprising; a narrow statutory remedy seldom provides an effective remedy for every act of infringement. But Mr. Gharavi will have received the remedy Congress provided for, and as the Ninth Circuit recognized: "whether the DMCA provides a sufficient remedy for copyright holders to vindicate their rights against infringers . . . is ultimately a question for Congress, not the courts." *Cox*, 148 F.4th at 1067.

Mr. Gharavi argues that his Subpoena should reach AdSense data because Section 512(k) broadly defines the term "service provider." ECF No. 3 at 19–21. The DC Circuit characterized this argument as "border[ing] upon the silly," noting that for a subpoena to issue, the provider must not only meet the definition of service provider under Section 512(k) but also be an appropriate recipient of a takedown notification under 512(c)(3)(A). *Verizon*, 351 F.3d at 1236. Like the providers in *Cox* and *Verizon*, AdSense would not be an appropriate recipient of a takedown

---

[5] Mr. Gharavi complains that Google produces this type of information in response to a Rule 45 subpoena, which he could obtain by filing a John Doe lawsuit. By contrast, Rule 45 of the Federal Rules of Civil Procedure provides a general mechanism for discovery from third-parties in pending litigation, subject to judicial oversight and balancing of burdens. The DMCA's § 512(h) process, by design, is far narrower: it is available only where the service provider is the host of the allegedly infringing content and is able to effectuate the statutory notice-and-takedown remedy. *See Charter*, 393 F.3d at 777; *Cox Commc'ns*, slip op. at 18–19.

notification because it does not store any allegedly infringing material. *See id.* ("the validity of a § 512(h) subpoena still depends upon the copyright holder having given the ISP, however defined, a notification effective under § 512(c)(3)(A)").

Even if one accepted Mr. Gharavi's characterization of AdSense as "the primary revenue system for infringement," AdSense is not the type of service provider a 512(h) subpoena can compel to disclose identifying information. Accordingly, to the extent the Subpoena purports to compel Google to disclose the information of users of its AdSense service, it should be quashed.

### 2. Google has acted in good faith, and sanctions are unwarranted.

Mr. Gharavi seeks sanctions against Google for various alleged "discovery violations," but Google's response to the Subpoena is consistent with the statute and controlling case law, Google has consistently acted and engaged with Mr. Gharavi in good faith, and there has been no violation of any Court order. Mr. Gharavi complains that Google allegedly "[c]omplete[ly] fail[ed] to produce 'last known address' as explicitly specified in the subpoena." ECF No. 3 at 31. Google timely produced the requested information reached by the 512(h) Subpoena by providing Mr. Gharavi with YouTube records containing identifying information for the requested accounts, which *include fields for the account holder's name and address*. Because the YouTube users chose to remain anonymous and did not provide name and address information to YouTube, the information was, in the parlance of Section 512(h)(3), not available to YouTube.

Mr. Gharavi then requested that Google search other Google services for additional user information. But as discussed above, that request extends beyond the proper scope of a 512(h) subpoena. Google then engaged with Mr. Gharavi to try understand why, despite the limited scope of Section 512(h), he felt Google must produce the additional information sought. Finding his explanation unconvincing, Google has declined to produce information from services not reached by Section 512(h).

Far from being sanctionable, Google's conduct was proper and undertaken in good faith. Even as inaccurately characterized by Mr. Gharavi, it would come nowhere near the type of conduct courts have determined to be sanctionable. *See e.g.*, *WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *11 (N.D. Cal. Apr. 24, 2020) (sanctions warranted for

intentional and "massive scale" spoliation of ESI evidence); *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 910–11 (2025) ($10,000 in sanctions imposed for attorney's filing of brief "replete with fabricated legal authority" generated from hallucinations found in AI sources such as ChatGPT). By relying on the plain text of the statute and Ninth Circuit precedent in construing the scope of Mr. Gharavi's Subpoena, Google certainly did not "clear[ly] and convincing[ly]" violate "a specific and definite [court] order," as Mr. Gharavi alleges. ECF No. 3 at 31. Mr. Gharavi's request for sanctions should be denied.

Mr. Gharavi's other complaints about alleged "untimely objections," "confidentiality restrictions," "boilerplate objections," "contradictory positions" and "systematic delay" are unfounded and would also be similarly unsanctionable even if they were not. They do not allege violation of a Court order. There was also no prejudice to Mr. Gharavi, as Google was in consistent communication with him. In fact, Google has been operating in good faith to try to resolve Mr. Gharavi's requests without Court involvement for *months* now. In the eight weeks between June 25 and August 25, Google exchanged numerous emails with Mr. Gharavi, produced the requested YouTube account information, met and conferred by video conference twice, and followed up with an email clearly stating its position about the scope of Section 512(h) so that any potential or forthcoming motion could be narrowly tailored. Then, after one email inquiring about accepting service of a future motion went unanswered, Mr. Gharavi was silent for six weeks before filing a Motion attaching more than 100 pages of pages of exhibits and declining Magistrate jurisdiction. Mr. Gharavi served Google's agent for service of process without notice or a courtesy copy to Google's counsel, with whom he had been in regular correspondence. And when Google requested an extension for its opposition because it did not receive notice of the Motion until a week after it was served, and because the matter was currently awaiting reassignment to a District Court Judge, Mr. Gharavi refused. The delay and burden of drafting a motion, about which Mr. Gharavi complains volubly, were self-inflicted, a result of his own lack of communication and unreasonable actions. Had he declined Magistrate jurisdiction after the meet and confer in August, a Judge could have been assigned and the correct streamlined procedure to address his one outstanding request would have been known to the parties, as further explained in Google's Motion to Strike (ECF No.

9). Mr. Gharavi failed to do so, choosing instead to sandbag Google and spend his time drafting an improper lengthy Motion with complaints far beyond necessary to resolve the outstanding legal issue. His burdens could easily have been avoided had he emailed or called to request a meet and confer before advancing these new issues and arguments. The Rules require no less. Mr. Gharavi's declination of expedited streamlined proceedings before a Magistrate Judge, and his own delay of almost 6-weeks before filing any motion or declination, contradicts any claim of prejudice. Sanctions against Google under these circumstances are unwarranted.

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's Motion against non-party Google. In the alternative, the Court should allow Google two weeks to respond to Mr. Gharavi's full motion under this Court's rules.

Dated:  October 16, 2025                **PERKINS COIE LLP**

By: */s/ Elise Edlin*
    Elise Edlin, Bar No. 293756
    Torryn T. Rodgers, Bar No. 319126
    Todd M. Hinnen, *pro hac* forthcoming

*Attorneys for Respondent*,
Google LLC