Exhibit 1

NIMA GHARAVI
4610 North Clark St. #1098
Chicago, IL 60640
+1 (773) 899-4688
dmca@midwestwrestle.com

Movant, *Pro Se*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE DMCA 512(h) SUBPOENA TO GOOGLE LLC | Case No.: 3:25-mc-80164-WHO<br><br>AMENDED OPPOSITION TO RESPONDENT'S MOTION TO STRIKE MR. GHARAVI'S MOTION TO COMPEL COMPLIANCE WITH DMCA SUBPOENA<br><br>**Judge:** Hon. William H. Orrick<br>**Date:** December 3, 2025<br>**Time:** 2:00<br>**Courtroom:** Courtroom 2 – 17th Floor |

# **TABLE OF CONTENTS**

<u>Page</u>

I.   INTRODUCTION ..................................................................................................... 1

II.   PROCEDURAL HISTORY ....................................................................................... 2

III.  LEGAL STANDARD ............................................................................................... 3

   A.   Liberal Construction for Pro Se Filings ......................................................... 3

   B.   Motions to Strike Are Disfavored ................................................................. 3

IV.  ARGUMENT ............................................................................................................ 3

   A.   Local Rule 7-2(b) Governs After Simultaneous Declination ....................... 3

   B.   August 22 Agreement Estops Google's Current Position ............................. 6

   C.   Google's Allegation of Rule Violations Is Baseless and Unsupported ......... 7

   D.   Google's Meet-and-Confer Allegations Are Contradicted by the Record .... 8

   E.   Google Systematically Mischaracterizes Communications to Mislead the Court ................... 11

   F.   The Motion to Strike Is a Transparent Delay Tactic Explicitly Conditioned on Mr. Gharavi's Declination of an Unwarranted Extension ....................... 15

   G.   Mr. Gharavi Acted in Good Faith Reliance .................................................. 17

V.   CONCLUSION ....................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Colaprico v. Sun Microsystems, Inc.*,

    758 F. Supp. 1335 (N.D. Cal. Mar. 13, 1991) .............................................................3

*Erickson v. Pardus*,

    551 U.S. 89 (June 4, 2007) ...............................................................................2, 3, 18

*Haines v. Kerner*,

    404 U.S. 519 (Jan. 13, 1972) ...........................................................................2, 3, 18

*In re DMCA 512(h) Subpoena to Dynadot Inc.*,

    No. 3:25-mc-80138-TLT (N.D. Cal. July 16, 2025)...................................................5

*In re DMCA Subpoena to Reddit, Inc.*,

    441 F. Supp. 3d 875 (N.D. Cal. Mar. 2, 2020) .................................................1, 3, 17

*In re DMCA Subpoena to X Corp.*,

    No. 3:23-mc-80294-PHK (N.D. Cal. Jan. 17, 2024) ...............................................4, 5

*In re Ex Parte Application of NC Dengen Kaihatsu KK*,

    No. 4:18-mc-80208-DMR (N.D. Cal. Apr. 11, 2019) ...................................................4

*In re hey, inc v. Twitter*,

    *No. 3:22-mc-80034-DMR* (N.D. Cal. May 23, 2022)..............................1, 4, 8, 17, 18

*J. Doe v. United States Department of Homeland Security*,

    No. 3:25-mc-80325-PHK (N.D. Cal. Oct. 16, 2025)...................................................5

*J. Doe v. United States Department of Homeland Security*,

    No. 3:25-mc-80325-PHK (N.D. Cal. Oct. 17, 2025)...................................................5

*Neilson v. Union Bank of Cal., N.A.*,

    290 F. Supp. 2d 1101 (C.D. Cal. Oct. 20, 2003).................................................3, 15

*Woori Bank v. Kwang Seok Kwon*,

    No. 4:21-mc-80084-DMR (N.D. Cal. Aug. 5, 2021)..................................................4

**Statutes**

17 U.S.C. § 512(h) ........................................................................................................... 2, 4, 16

17 U.S.C. § 512(k)(1) .......................................................................................................... 16, 18

28 U.S.C. § 636(c)(1) ............................................................................................................... 3, 7

**Rules**

Fed. R. Civ. P. 45 ........................................................................................................................ 5

Fed. R. Civ. P. 45(d)(2)(B) ....................................................................................... 1, 2, 10, 16, 18

N.D. Cal. Civ. L.R. 7-2(b) .................................................................................... 1, 3, 4, 5, 7, 8, 17, 18

N.D. Cal. Civ. L.R. 7-3(a) ........................................................................................ 1, 2, 16, 17, 18

OPPOSITION TO RESPONDENT'S MOTION TO STRIKE MR. GHARAVI'S MOTION TO COMPEL COMPLIANCE
CASE NO.: 3:25-mc-80164-WHO

## I.    INTRODUCTION

Google LLC's Motion to Strike Movant's Motion to Compel Compliance with DMCA Subpoena (Dkt. 9) (the "**Motion to Strike**" or "**Mot.**") is a transparent delay tactic designed to circumvent Local Rule 7-3(a)'s 14-day opposition deadline. Rather than respond to the substantive issues raised in Mr. Gharavi's Motion to Compel Compliance with DMCA Subpoena (Dkt. 3) (the "**Motion to Compel**")— including complete waiver of objections under Rule 45(d)(2)(B)—Google manufactures a meritless procedural dispute.

The Motion to Strike fails for three independent reasons:

**First**, Local Rule 7-2(b) applies. When Mr. Gharavi simultaneously filed his motion and declined magistrate jurisdiction on October 2, 2025, the matter became subject to reassignment because magistrate judges lack jurisdiction over dispositive miscellaneous matters absent consent. *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 880 (N.D. Cal. Mar. 2, 2020). Local Rule 7-2(b) governs motions filed before assignment to the district judge who will hear the matter, establishing that such motions shall be contained in "one filed document not exceeding 25 pages in length."

**Second**, Google's own counsel uses this exact procedure. In *In re hey, inc v. Twitter, No. 3:22-mc-80034-DMR*, Dkt. No. 6 (N.D. Cal. May 23, 2022), Perkins Coie filed a 25-page motion to quash before Judge Ryu under Local Rule 7-2(b). (Suppl. Gharavi Decl. ¶ 15.)[1] The Court affirmed: "The Respondent timely filed its Motion to Quash." (Dkt. 11 at 2; Suppl. Gharavi Decl. ¶ 15.) Google cannot now claim this procedure creates a "procedural vacuum" when its counsel successfully used it.

**Third**, Google agreed to this procedure on August 22, 2025. During the meet and confer, Mr. Gharavi explicitly stated Judge Ryu's 5-day rule would not apply because he intended to decline magistrate jurisdiction. (Suppl. Gharavi Decl. ¶¶ 3-5.) Neither Todd Hinnen nor Elise Edlin objected. (Suppl. Gharavi Decl. ¶ 5.) Mr. Hinnen, appearing via video, appeared visibly relieved upon learning there would be no imminent 5-day deadline. (Suppl. Gharavi Decl. ¶ 4.) After Mr. Gharavi invested 171.8 hours relying on this understanding, Google now reverses position. (Suppl. Gharavi Decl. ¶¶ 19-20.)

The record demonstrates that Mr. Gharavi properly applied Local Rule 7-2(b), Google's counsel

---

[1] The Supplemental Declaration of Nima Gharavi in Support of Opposition to Respondent's Motion to Strike Mr. Gharavi's Motion to Compel Compliance with DMCA Subpoena ("Suppl. Gharavi Decl.") was filed at Dkt. 10-1 (ECF No. 10-1) on October 14, 2025.

agreed to this framework during the August 22 meet-and-confer, and Google's Motion to Strike is explicitly conditioned on Mr. Gharavi's declination of an unwarranted extension.

Courts liberally construe *pro se* filings. *Haines v. Kerner*, 404 U.S. 519, 520 (Jan. 13, 1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (June 4, 2007). Google received proper service on October 2 and has 14 days under Local Rule 7-3(a) to respond. (Suppl. Gharavi Decl. ¶ 11.) That is sufficient. Striking the motion would reward Google's pattern of unperformed commitments and untimely objections filed 2, 27, 37, and 44 days late. (Suppl. Gharavi Decl. ¶ 21.)

For these reasons, the Court should deny the Motion to Strike.

## II.    PROCEDURAL HISTORY

On June 25, 2025, Mr. Gharavi served a DMCA § 512(h) subpoena on Google LLC. (Dkt. 3-1 ¶ 4 & Ex. K.) On July 11, 2025—16 days later and two days beyond the Rule 45(d)(2)(B) deadline— Google served untimely objections. (Suppl. Gharavi Decl. ¶ 21(a); Dkt. 3-1 ¶ 7 & Ex. C.) On August 5, 2025, Google raised new objections 41 days after service. (Suppl. Gharavi Decl. ¶ 21(b); Dkt. 3-1 ¶ 22 & Ex. A, at 12-13.) On August 15, 2025, Google raised further objections 51 days after service. (Suppl. Gharavi Decl. ¶ 21(c); Dkt. 3-1 ¶ 20.) On August 22, 2025, Google raised additional objections 58 days after service. (Suppl. Gharavi Decl. ¶ 21(d); Dkt. 3-1 ¶ 23 & Ex. N.)

During the August 22, 2025 videoconference, the parties reached an impasse requiring motion practice. (Suppl. Gharavi Decl. ¶ 3.) Mr. Gharavi explicitly stated he would decline magistrate jurisdiction and Judge Ryu's 5-day rule would not apply. (Suppl. Gharavi Decl. ¶¶ 3-5.) Neither counsel objected. (Suppl. Gharavi Decl. ¶ 5.) The parties discussed email service authorization, with Mr. Hinnen indicating it was likely subject to confirmation. (Suppl. Gharavi Decl. ¶ 23.) As of the filing of this brief, Google **still** has not authorized email service. *Id.*

On August 25, 2025, Mr. Gharavi emailed both counsel stating there was a "ripe, justiciable controversy" and **again** asking whether Google authorized email service. (Suppl. Gharavi Decl. ¶ 8; Dkt. 3-1 ¶ 27 & Ex. A., at 1) Google never responded. (Suppl. Gharavi Decl. ¶ 9.)

On October 2, 2025, Mr. Gharavi simultaneously filed his Motion to Compel and declination of magistrate jurisdiction. (Dkts. 3, 5.) Mr. Gharavi served Google LLC's registered agent that same day by hand delivery at 3:59 p.m. Central Time. (Suppl. Gharavi Decl. ¶ 11; Dkt. 3-3) Google's counsel

represented in an October 9, 2025 email that they received the motion on **October 8, 2025**. (Edlin Decl. Ex. 1, at 9; Suppl. Gharavi Decl. ¶ 12.) However, the Edlin Declaration states counsel received the motion on **October 7, 2025**. Edlin Decl. ¶ 5. In either case, under Local Rule 7-3(a), Google's opposition was due 14 days after service—October 16, 2025.

## III.   LEGAL STANDARD

### A.   Liberal Construction for Pro Se Filings

Courts must liberally construe *pro se* filings. *Haines v. Kerner*, 404 U.S. 519, 520 (Jan. 13, 1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (Jun. 4, 2007). Technical procedural defects do not warrant striking substantive motions where good faith is shown.

### B.   Motions to Strike Are Disfavored

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. Oct. 20, 2003); see also *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. Mar. 13, 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.").

## IV.   ARGUMENT

### A.   Local Rule 7-2(b) Governs After Simultaneous Declination

When Mr. Gharavi simultaneously filed his motion and declined magistrate jurisdiction pursuant to 28 U.S.C. § 636(c)(1) on October 2, 2025, the matter required reassignment to a district judge. (Suppl. Gharavi Decl. ¶ 13.) Under federal law, magistrate judges may handle dispositive matters only with the parties' written consent. As courts in this District have recognized, magistrate judges may handle dispositive miscellaneous matters only with the parties' consent. *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 880. In such circumstances, Local Rule 7-2(b) governs.

Local Rule 7-2(b) establishes that motions shall be contained in "one filed document not exceeding 25 pages in length." This generally applicable rule governs motions filed before assignment to the judge who will hear the matter. Google's claim that this creates a "procedural vacuum" (Mot. 5) is refuted by the District's consistent practice in analogous miscellaneous proceedings.

The procedural distinction is clear and substantive. When a DMCA § 512(h) subpoena dispute arises within a case already assigned to a magistrate judge with both parties' consent, discovery letter briefing under that magistrate's standing order may apply. *See In re DMCA Subpoena to X Corp.*, No. 3:23-mc-80294-PHK, Dkt. No. 7 (N.D. Cal. Jan. 16, 2024). **But when filing a motion triggers judicial assignment**—whether by opening a new miscellaneous proceeding or by simultaneously declining magistrate jurisdiction—Local Rule 7-2(b)'s formal motion practice governs. At the time of filing, it is impossible to predict which district judge will be assigned or what standing orders will apply; therefore, the district-wide Local Rules control. Judge Ryu's Standing Order § 14 applies only to non-dispositive discovery disputes in cases already assigned to her, or where parties to dispositive matters have consented to her jurisdiction. Mr. Gharavi simultaneously declined magistrate jurisdiction when filing his motion, triggering reassignment to a district judge and making Local Rule 7-2(b) applicable.

A freestanding miscellaneous subpoena proceeding is fundamentally different from a discovery dispute within an existing lawsuit. These matters require proper briefing commensurate with their dispositive nature, not the abbreviated letter format appropriate for routine discovery disputes between parties already before the court. Google cannot conflate these distinct procedural categories to manufacture a supposed violation of standing order requirements that were never applicable.

**Google's own counsel confirms this procedure is proper.** In *In re hey, inc v. Twitter, No. 3:22-mc-80034-DMR*, Dkt. No. 6, Perkins Coie filed a 25-page motion to quash before Judge Ryu under Local Rule 7-2(b). (Suppl. Gharavi Decl. ¶ 15.) The Court affirmed: "The Respondent timely filed its Motion to Quash." (Dkt. 11 at 2; Suppl. Gharavi Decl. ¶ 15.) Perkins Coie knows Local Rule 7-2(b) applies to miscellaneous proceedings—they have successfully used it themselves.

**This practice is well-established in analogous miscellaneous proceedings.** Multiple parties have successfully filed motions exceeding 20 pages under Local Rule 7-2(b) in similar matters:

- *In re Ex Parte Application of NC Dengen Kaihatsu KK*, No. 4:18-mc-80208-DMR, Dkt. No. 9 (N.D. Cal. Apr. 11, 2019) (22-page motion to quash subpoenas)
- *Woori Bank v. Kwang Seok Kwon*, No. 4:21-mc-80084-DMR, Dkt. No 9 (N.D. Cal. Aug. 5, 2021) (20-page motion to quash subpoena)
- *Woori Bank v. Kwang Seok Kwon*, No. 4:21-mc-80084-DMR, Dkt. No. 12 (N.D. Cal. Sep. 3,

2021) (21-page opposition to motion to quash)

**Yesterday**, the ACLU filed a 20-page motion to quash in *J. Doe v. United States Department of Homeland Security*, No. 3:25-mc-80325-PHK, Dkt. No. 1 (N.D. Cal. Oct. 16, 2025). Like Mr. Gharavi's motion, the *J. Doe* motion was a 20-page brief regarding Rule 45 compliance filed in a miscellaneous proceeding. It was accepted without objection despite being assigned to Magistrate Judge Peter H. Kang, whose Standing Order requires parties to "jointly file a detailed letter with the Court" not to "exceed five (5) pages" for discovery disputes. Yet the ACLU's motion exceeded this limit by 300%.

**Today**, Judge Kang issued an order granting interim relief and staying compliance with the government summonses pending resolution of the motion to quash. *See J. Doe v. United States Department of Homeland Security*, No. 3:25-mc-80325-PHK, Dkt. No. 3 (N.D. Cal. Oct. 17, 2025). Judge Kang did not strike the 20-page motion for violating his 5-page standing order. He did not sanction the ACLU for procedural noncompliance. Instead, he immediately addressed the merits to protect First Amendment rights.

The sophisticated counsel who filed that 20-page motion—including two ACLU organizations and experienced civil rights litigators—understood that Local Rule 7-2(b) governs motions filed before judicial assignment in miscellaneous proceedings, and that standing orders apply only after a judge is assigned and the parties are proceeding before that judge. Under Google's logic, the ACLU's 20-page motion would violate Judge Kang's Standing Order just as Mr. Gharavi's allegedly violates standing orders here. Google cannot claim Mr. Gharavi's procedure is improper when the same procedure was used by some of the most experienced civil rights litigators in the country—and when a judge in this very District accepted and ruled on that motion today without striking it or imposing sanctions.

Mr. Gharavi's reliance on this framework was reasonable. He relied on *X Corp.* (magistrate lacks jurisdiction absent consent), direct experience in *In re DMCA 512(h) Subpoena to Dynadot Inc.*, No. 3:25-mc-80138-TLT, Dkt. No. 8 (N.D. Cal. July 16, 2025) (Clerk's reassignment to district judge when respondent failed to consent to magistrate jurisdiction), and Perkins Coie's own practice. (Suppl. Gharavi Decl. ¶¶ 13-17.)

**Google contradicts itself.** At page 2, Google claims Mr. Gharavi "filed this Motion and, shortly thereafter, a declination." But in footnote 2 at page 4, Google admits the declination was "filed

concurrently with the Motion." The docket confirms they were concurrent (Dkts. 3, 5), but Google distorts the timeline to manufacture a nonexistent procedural violation.

### B. August 22 Agreement Estops Google's Current Position

During the August 22 videoconference, Mr. Gharavi explicitly informed both counsel that Judge Ryu's 5-day standing order would not apply because he intended to decline magistrate jurisdiction. (Suppl. Gharavi Decl. ¶¶ 3-5.) He explained he would file his motion when ready under the applicable Local Rules, and the parties could proceed from there. (Suppl. Gharavi Decl. ¶ 3.) This was a clear statement about the procedural framework that would govern the motion practice both parties understood was imminent.

Mr. Hinnen appeared visibly relieved upon hearing this explanation. (Suppl. Gharavi Decl. ¶ 4.) His facial expression changed noticeably. His demeanor relaxed. (Suppl. Gharavi Decl. ¶ 4.) This visible relief confirmed his understanding and agreement that Judge Ryu's 5-day standing order would not apply after declination.

Neither objected. (Suppl. Gharavi Decl. ¶ 5.) As experienced federal litigators, they were obligated to correct any misunderstanding during the meet and confer. Their silence—combined with Mr. Hinnen's visible relief—constituted assent.

Mr. Gharavi's contemporaneous notes state: "We presume we would proceed with the 5 day rule under DMR." (Suppl. Gharavi Decl. ¶¶ 6-7; Dkt. 3-1 ¶ 23 & Ex. N, at 2.) The conditional language ("would proceed," "presume") demonstrates both parties understood application of Judge Ryu's rules was contingent on whether they would proceed before Judge Ryu—which they would not after declination. (Suppl. Gharavi Decl. ¶ 7.)

The Edlin Declaration confirms Judge Ryu's rules were discussed but conspicuously omits that Mr. Gharavi explained the 5-day rule would not apply, that neither counsel objected, and that Mr. Hinnen appeared relieved. These omissions support Mr. Gharavi's account.

Google had multiple opportunities to object to the procedural format: during the August 22 call, in response to the August 25 email referencing "ripe, justiciable controversy," or during the five-week period before Mr. Gharavi filed his motion. (Suppl. Gharavi Decl. ¶ 8.) Instead, Google waited until Mr. Gharavi declined their request for an unwarranted extension before raising this procedural objection for

the first time—claiming that Mr. Gharavi should have filed a 5-page joint discovery letter brief under Judge Ryu's Standing Order rather than a 25-page motion under Local Rule 7-2(b)—only after Mr. Gharavi had already invested 171.8 hours preparing and filing his motion. (Suppl. Gharavi Decl. ¶¶ 19-20.) This timing is strategic and manifestly unjust.

### C. Google's Allegation of Rule Violations Is Baseless and Unsupported

Google alleges Mr. Gharavi's Motion "is in violation of the Federal and Local Rules." (Mot. 7.) Specifically, Google claims the Motion violates Local Rule 7-2(b)(2) because it "does not . . . list a hearing date." (Mot. 3.) This accusation is both factually wrong and legally misguided.

**First**, Mr. Gharavi's Motion complies with all applicable Federal Rules. Federal Rule of Civil Procedure 45(d)(2)(B)(i) expressly authorizes a motion to compel compliance with a subpoena. Mr. Gharavi properly served Google LLC by hand-delivering the motion to Corporation Service Company ("**CSC**"), Google's registered agent for service of process, under Federal Rule of Civil Procedure 5(b)(2)(A). (Dkt. 3-3; Suppl. Gharavi Decl. ¶ 11.) And Mr. Gharavi exercised his statutory right to decline magistrate jurisdiction under 28 U.S.C. § 636(c)(1). (Dkt. 5.)

**Second**, Mr. Gharavi's Motion complies with Local Rule 7-2(b)(2). Google claims the Motion "does not . . . list a hearing date" in violation of Local Rule 7-2(b)(2). But this objection ignores the procedural reality: **no district judge had been assigned when Mr. Gharavi filed his Motion**. (Suppl. Gharavi Decl. ¶ 13.)

When filing a motion triggers judicial assignment—as it did here after Mr. Gharavi declined magistrate jurisdiction on a dispositive matter—it is impossible to list a specific hearing date because the moving party does not know which judge will hear the matter or what that judge's calendar availability is. In such circumstances, it is standard practice to list "TBD" for the hearing information and await the Clerk's assignment of a judge, after which the motion is re-noticed with proper hearing details. Mr. Gharavi followed this exact procedure. (Dkt. 3 at 1 (listing "Judge: TBD, Date: TBD, Time: TBD, Courtroom: TBD").) Indeed, it would be impossible to list a specific hearing date before judicial assignment—a party cannot reserve a date on a judge's calendar that has not yet been assigned.

Local Rule 7-2(b)(2) requires that motions "list a hearing date," but this requirement presupposes that a hearing date is available to be listed. Where no district judge has been assigned and no hearing date

exists, listing "TBD" is the only procedurally appropriate option. Google's hypertechnical reading would make it impossible for any party to file a motion that triggers judicial assignment—an absurd result that cannot be what the rule intends.

**Third**, Google's entire motion conflates standing orders—which are individual judges' regulation of practice in cases before them—with binding Federal and Local Rules. Standing orders express judicial preferences for case management but do not override statutory rights or create independent grounds to strike properly filed motions. The Court's standing order applies to matters proceeding before the Court with consent to magistrate jurisdiction. Where, as here, a party declines magistrate jurisdiction regarding a dispositive matter simultaneously with filing, no standing order governs the filing itself—only the applicable Federal and Local Rules.

Google's assertion that Mr. Gharavi's Motion "does not comply with the standing orders of any of the eight possible Magistrate or District Judges" (Mot. 3) is demonstrably false. Multiple parties— including Google's own counsel in *hey, inc v. Twitter* and the ACLU in *J. Doe v. DHS*—have successfully filed 20+ page briefs in analogous miscellaneous proceedings under Local Rule 7-2(b).

Google's accusation that Mr. Gharavi's Motion violates "Federal and Local Rules" is a **serious** mischaracterization unsupported by any legal authority. The Court should disregard it.

### D. Google's Meet-and-Confer Allegations Are Contradicted by the Record

Google devotes an entire section (Mot. 6-7) to accusing Mr. Gharavi of failing to meet and confer in good faith. This argument is unpersuasive coming from a party that obstructed resolution through shifting objections, ignored repeated requests to meet and confer, and ultimately canceled a scheduled conference less than five hours before it was to occur.

### 1. The Record Refutes Google's Narrative

Google claims: "between August 25 and October 2, 2025, Mr. Gharavi did not attempt to contact anyone to discuss his outstanding requests." (Mot. 6-7.) This mischaracterizes both the timeline and the nature of the dispute.

The August 22, 2025 meet and confer concluded with the parties at an impasse on substantive issues. (Suppl. Gharavi Decl. ¶ 3; Dkt. 3-1 ¶ 23 & Ex. N, at 2.) Both parties understood that motion practice was the next step. Three days later, on August 25, Mr. Gharavi sent an email explicitly stating:

"it would seem we have a ripe, justiciable controversy." (Dkt. 3-1 ¶ 27 & Ex. A, at 1; Suppl. Gharavi Decl. ¶ 8.) This was not a request for another meet and confer—it was notice that the dispute had matured and formal resolution was necessary.

Google never responded to that email. (Suppl. Gharavi Decl. ¶ 9.) Not to dispute Mr. Gharavi's characterization of a "ripe, justiciable controversy." Not to suggest further discussions. Not to confirm email service authorization (which Mr. Gharavi also requested in that same email). **Nothing**. For over five weeks.

### 2. Google Was the Party That Obstructed Meet-and-Confers

Google's accusation rings hollow given its own pattern of obstruction:

- **August 5, 2025:** Mr. Gharavi requested a meet and confer. (Dkt. 3-1 ¶ 27 & Ex. A, at 11-12.)

- **August 6, 2025:** After Google ignored the request, Mr. Gharavi sent a formal demand invoking Local Rule 37-1(a), noting that Google itself had previously requested the opportunity to meet and confer "in advance of any such filing." (Dkt. 3-1 ¶ 27 & Ex. A, at 10-11.; Dkt. 3-1 ¶ 7 & Ex. C, at 3.)

- **August 8, 2025:** Google finally agreed to meet on August 12. (Dkt. 3-1 ¶ 27 & Ex. A, at 10.)

- **August 12, 2025, 10:23 AM CT:** Less than five hours before the scheduled conference, Google canceled: "We apologise for the inconvenience but we are unable to take the meet and confer as scheduled on August 12th due to scheduling conflicts." (Dkt. 3-1 ¶ 19 & Ex. A, at 8-9.)

Mr. Gharavi—acting in good faith despite Google's shifting objections, repeated failures to respond to meet-and-confer requests, and last-minute cancellation of a scheduled conference—accommodated counsel's travel schedule and agreed to reschedule for August 15. (Dkt. 3-1 ¶ 27 & Ex. A, at 7-8.) The parties met again on August 22, reaching the impasse that necessitated this Motion. (Suppl. Gharavi Decl. ¶ 3.)

### 3. The Five-Week Period Reflects Research Time, Not Bad Faith

Google repeatedly emphasizes the "nearly six weeks" (Mot. 1) or "41 days" (Mot. 5) between the last meet and confer and Mr. Gharavi's filing. This timeline is misleading in two ways.

First, as explained above, the parties had reached a "ripe, justiciable controversy" by August 25. (Dkt. 3-1 ¶ 27 & Ex. A, at 1.) Google does not—because it cannot—identify what changed during those

weeks that would have made another meet and confer productive.

Second, Mr. Gharavi is a *pro se* party with no legal education. (Dkt. 3-1 ¶¶ 1, 29.) He notified Google on August 25 that "as a pro se party concurrently running a solo business, I imagine it will take me more time than you might be traditionally accustomed to for a counterparty to perform the requisite legal research and motion drafting." (Dkt. 3-1 ¶ 27 & Ex. A, at 1.) The five weeks reflects the time required to research DMCA statutory requirements, legislative history, case law, and procedural rules, then draft comprehensive briefing addressing Google's escalating objections. (Suppl. Gharavi Decl. ¶¶ 18-20.) Mr. Gharavi invested 171.8 hours during this period. (Suppl. Gharavi Decl. ¶ 19.)

### 4. Google's Own Unperformed Commitments Demonstrate Bad Faith

During the August 22 meet and confer, Google's counsel committed to confirm two matters:

- Whether Google would authorize counsel to accept service via email (Suppl. Gharavi Decl. ¶ 23; Edlin Decl. ¶ 3)

- Whether Google had notified the affected users and whether any had objected to disclosure (Suppl. Gharavi Decl. ¶ 24)

As of the filing of this brief, Google has never fulfilled either commitment. (Suppl. Gharavi Decl. ¶¶ 23-24.) When Mr. Gharavi followed up on August 25 asking about service authorization, Google did not respond. (Suppl. Gharavi Decl. ¶ 9.)

Google's failure to authorize email service then became the basis for its complaint that Mr. Gharavi properly served Google's registered agent instead of emailing counsel. (Mot. 3, 7.) **Google's failure** to respond to the August 25 email became the basis for accusing Mr. Gharavi of bad faith. (Mot. 6-7.) Google's accusations of bad faith are undermined by its own pattern of ignoring meet-and-confer requests and canceling a scheduled conference on short notice.

### 5. Google's Bad Faith Pattern: The Court Should Reject Google's Narrative

Federal courts require good-faith meet-and-confer efforts to "promote[] efficiency, reduce[] motion practice, preserve[] judicial resources, and create[] a clear record." (Mot. 6.) The record shows the opposite: Google undermined this process by raising objections weeks and months after the Rule 45(d)(2)(B) deadline:

- Initial boilerplate objections: July 11, 2025 (2 days late)

- Address objection: August 5, 2025 (27 days late)

- Undue burden objection: August 15, 2025 (37 days late)

- Corporate structure objection: August 22, 2025 (44 days late)

(Suppl. Gharavi Decl. ¶ 21; see also Dkt. 3 at 3-8.)

Each new objection required Mr. Gharavi to research and respond, prolonging the dispute Google now claims he failed to resolve expeditiously. Google cannot manufacture delay through its own untimely objections, then fault Mr. Gharavi for the time required to address them.

The meet-and-confer record shows Mr. Gharavi repeatedly sought to engage, while Google canceled the August 12 conference, ignored emails, failed to fulfill commitments, and raised untimely objections. Google's accusation of bad faith is a transparent attempt to shift blame for its own obstruction. The Court should reject it.

### E. Google Systematically Mischaracterizes Communications to Mislead the Court

Throughout its Motion, Google employs loaded language and selective omissions to create a false narrative. When the Court examines the actual record—which Google has itself provided as an exhibit—the mischaracterizations become apparent.

### 1. Pattern of Mischaracterization

| Google's Characterization | Actual Record | Location in Motion |
|---|---|---|
| Mr. Gharavi "demanded" AdSense information | Email states: "please provide" and "thank you for your continued cooperation" | p. 2 |
| Google "asked" Mr. Gharavi to withdraw the Motion | Email uses identical "respectfully" language that Google criticizes Mr. Gharavi for using | p. 6 |
| Mr. Gharavi "did not attempt to contact anyone" | After August 25 email announcing "ripe, justiciable controversy," Google never responded for 5+ weeks | p. 7 |
| Mr. Gharavi's "repeated refusal" to grant extension | Mr. Gharavi declined twice with detailed, substantive explanations—same language | p. 7 |

OPPOSITION TO RESPONDENT'S MOTION TO STRIKE MR. GHARAVI'S MOTION TO COMPEL COMPLIANCE
CASE NO.: 3:25-mc-80164-WHO

| | Google uses ("respectfully decline") | |
|---|---|---|
| **Mr. Gharavi "refused" to proceed properly** | Mr. Gharavi "respectfully" declined Google's requested delay, explaining his position in detail | p. 1 |

Three examples illustrate this pattern:

**First**, Google states Mr. Gharavi "demanded" AdSense information (Mot. 2), suggesting aggressive, unreasonable conduct. The actual email states "please provide (to the extent available)" and closes with "thank you for your continued cooperation in resolving this matter." (Dkt. 3-1 ¶ 27 & Ex. A, at 13-14). This is professional correspondence, not a demand.

**Second**, Google claims it "asked" Mr. Gharavi to withdraw the Motion and proceed "consistent with the rules" (Mot. 6), framing Google's request as reasonable guidance. Although Mr. Gharavi "respectfully decline[d]" Google's extension request (Edlin Decl. Ex. 1, at 2, 6), Google insists he "refus[ed]" (Mot. 7), implying bad faith. **Both** parties communicated professionally using identical "respectfully" language, yet Google alone characterizes Mr. Gharavi's conduct as unwarranted.

**Third**, Google states "between August 25 and October 2, 2025, Mr. Gharavi did not attempt to contact anyone" (Mot. 6-7). This ignores that Mr. Gharavi's August 25 email explicitly stated "it would seem we have a ripe, justiciable controversy." (Dkt. 3-1 ¶ 27 & Ex. A, at 1; Suppl. Gharavi Decl. ¶ 8). This was notice that the parties had reached impasse and formal resolution was necessary. Google never responded. (Suppl. Gharavi Decl. ¶ 9). Google cannot claim Mr. Gharavi failed to communicate when Google itself ignored Mr. Gharavi's communication signaling that further informal resolution was futile.

This pattern of selective quotation, loaded characterization, and strategic omission runs throughout Google's Motion.

### 2. Request for Heightened Scrutiny

Before addressing the substantive mischaracterizations above, the Court should note one objective misrepresentation—**repeated four times**—that demonstrates a pattern of inaccuracies in Google's factual representations. Google repeatedly claims Mr. Gharavi submitted "more than 100 pages of exhibits" (Mot. 1, 3, 6, 7), but the docket shows otherwise. Exhibit A begins at ECF page 17 and Exhibit N ends at ECF page 108 (Dkt. 3-1, at ECF 17-108)—a total of 92 pages of exhibits, not "more than 100." This is not a good-faith estimate; it is a deliberate exaggeration designed to make Mr. Gharavi's

filing appear more burdensome than it is.

When a party objectively misstates verifiable facts like page counts, it casts doubt on all its characterizations. The pattern of inaccuracies in Google's representations suggests a systematic approach rather than isolated error. The Court should review all of Google's factual representations with heightened scrutiny, particularly where Google characterizes communications. The actual emails (already in the record at Dkt. 3-1, Ex. A) tell a different story than Google's brief suggests.

When a party systematically mischaracterizes the record, it undermines the credibility of all its arguments. The Court should draw a negative inference from Google's pattern of selective quotation, loaded language, exaggeration, and strategic omission.

**3. Google's Failure to Authorize Service and Unperformed Commitments**

Google repeatedly complains that Mr. Gharavi served its registered agent rather than emailing counsel (Mot. 3, 7), framing this as Mr. Gharavi's choice to create delay. Google omits critical context: During the August 22 meet and confer, Google's counsel said email service would "likely" be acceptable but needed to "confirm with the client." (Suppl. Gharavi Decl. ¶ 23; Edlin Decl. ¶ 3). Mr. Gharavi followed up on August 25 asking for confirmation. (Dkt. 3-1 ¶ 27 & Ex. A, at 1; Suppl. Gharavi Decl. ¶ 8). Google never responded. (Suppl. Gharavi Decl. ¶ 9). As of the filing of this brief, Google still has not authorized email service. (Suppl. Gharavi Decl. ¶ 23).

Mr. Gharavi properly served Google's registered agent **because** Google failed to authorize the alternative service Google now claims it would have accepted. Any delay between service on October 2 and counsel's receipt on October 7 or 8 resulted from Google's own internal processes—not from any action by Mr. Gharavi.

Moreover, the Edlin Declaration creates ambiguity about service dates. It states: "On October 7, 2025, my colleagues and I received a forwarded copy of Mr. Gharavi's Motion, from Google, who informed us that Mr. Gharavi had served Google's formal agent of process, Corporation Service Company, on October 6, 2025." (Edlin Decl. ¶ 5). But Mr. Gharavi actually served CSC on October 2, 2025 at 3:59 PM Central Time, as documented in the Certificate of Service. (Dkt. 3-3; Suppl. Gharavi Decl. ¶ 11). The Declaration's phrasing obscures that Google took four days to notify its own counsel about service—a delay that is Google's own.

Additionally, Google cannot keep its story straight: the Edlin Declaration states counsel received the motion on October 7 (Edlin Decl. ¶ 5), while her October 9 email states "yesterday afternoon"—October 8. (Edlin Decl., Ex. 1, at 9). Regardless, service was proper on October 2, giving Google the full 14 days under Local Rule 7-3(a).

**4. The Standing Order Reversal**

Google's most significant mischaracterization concerns the August 22 agreement regarding procedural rules.

**What Actually Happened:** During the August 22 meet and confer, Mr. Gharavi explicitly stated that he intended to decline magistrate jurisdiction and that Judge Ryu's 5-day standing order would not apply. (Suppl. Gharavi Decl. ¶¶ 3-5.) He explained he would file his motion under the applicable Local Rules when ready, and the parties could proceed from there. (Suppl. Gharavi Decl. ¶ 3.)

Neither Mr. Hinnen nor Ms. Edlin objected. (Suppl. Gharavi Decl. ¶ 5.) Mr. Hinnen, appearing via video, appeared visibly relieved—his facial expression changed noticeably and his demeanor relaxed—upon learning there would be no imminent 5-day deadline. (Suppl. Gharavi Decl. ¶ 4.)

**Google's Current Position:** Google now claims Judge Ryu's Standing Order applied throughout (Mot. 5), that the Motion violates "Judge Ryu's Standing Order and the standing orders of every other Judge and Magistrate Judge in the Oakland Division" (Mot. 3), and that Google "explained carefully and clearly" these requirements to Mr. Gharavi. (Mot. 6.)

This is a **complete reversal** of position. Mr. Hinnen is a former Ninth Circuit law clerk. If he disagreed with Mr. Gharavi's understanding that Judge Ryu's standing order would not apply after declining magistrate jurisdiction, he had every obligation to say so during the meet and confer. His visible relief and failure to object constituted agreement. (Suppl. Gharavi Decl. ¶¶ 4-5.)

Mr. Gharavi relied on this understanding and invested 171.8 hours over five weeks. (Suppl. Gharavi Decl. ¶¶ 19-20.) Google cannot now claim—after Mr. Gharavi filed his motion—that it disagreed all along but failed to mention it.

**5. Edlin Declaration's Conspicuous Omissions**

The Edlin Declaration confirms that Judge Ryu's standing orders were discussed during the August 22 meet and confer. (Edlin Decl. ¶ 3.) But it conspicuously omits:

- That Mr. Gharavi explained the 5-day rule would not apply after declining magistrate jurisdiction
- That Mr. Hinnen appeared visibly relieved upon hearing this
- That neither counsel objected to this procedural framework

These omissions corroborate Mr. Gharavi's account. If counsel had disagreed, the Declaration would affirmatively state their objection. The silence is telling.

**F. The Motion to Strike Is a Transparent Delay Tactic Explicitly Conditioned on Mr. Gharavi's Declination of an Unwarranted Extension**

Google's true purpose is revealed by both its own words and the structure of its Motion. This is not a good-faith procedural objection—it is a transparent attempt to obtain additional time beyond Local Rule 7-3(a)'s 14-day deadline.

**1. Google's Own Email Confirms the Delay Tactic**

On October 10, 2025, after Mr. Gharavi declined Google's extension request, counsel wrote: "If you do not, to preserve Google's ability to brief these issues when a judge has been assigned and the applicable rules have been determined, **we will file an opposed motion for extension and motion to strike your motion as improper as soon as possible**." (Edlin Decl. Ex. 1, at 6 (emphasis added).)

Google explicitly conditioned both motions—a motion for extension and a motion to strike—on Mr. Gharavi's decision not to grant an extension, and three days later filed only the motion to strike to gain the extension he properly declined.

Section B of the Motion confirms this strategy. After devoting seven pages to purported procedural violations, Google requests: "Should the Court decline Google's Motion to Strike, Google requests a short extension to prepare its opposition." (Mot. 7-8.) The motion to strike is merely a vehicle for the extension request Google signaled it would seek in its October 10 email.

This is precisely the type of delay tactic courts disfavor. "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and **because they are often used as a delaying tactic**." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (emphasis added).

**2. Google Blames Mr. Gharavi for Google's Own Failures**

Google complains that it needs additional time because counsel "only received Mr. Gharavi's

---

OPPOSITION TO RESPONDENT'S MOTION TO STRIKE MR. GHARAVI'S MOTION TO COMPEL COMPLIANCE
CASE NO.: 3:25-mc-80164-WHO

improperly lengthy motion and exhibits several days after they were filed." (Mot. 3.) But as explained in Section E above, Mr. Gharavi properly served Google's registered agent on October 2, 2025. (Dkt. 3-3; Suppl. Gharavi Decl. ¶ 11.) Any delay between service and counsel's receipt resulted from Google's own internal processes—not from any action by Mr. Gharavi.

### 3. The Delay Was Caused by Google's Unperformed Commitments

Moreover, any delay between service on Google's registered agent (October 2) and receipt by counsel (October 7 or 8) resulted from Google's own failure to authorize email service. During the August 22 meet and confer, counsel committed to confirm authorization but never did—despite Mr. Gharavi's August 25 follow-up. (See Section D above; Suppl. Gharavi Decl. ¶¶ 8-9, 23.) Google cannot complain about delays its own non-responsiveness created.

### 4. Perkins Coie Has Adequate Resources

Google's complaint about needing more time is particularly unconvincing given the resources at its disposal. Perkins Coie is a firm with approximately 1,200 attorneys. Google received proper service on October 2, 2025, giving it 14 days until the October 16 opposition deadline under Local Rule 7-3(a). This is the exact time period the Local Rule contemplates.

The irony is striking: Google spent months delaying compliance with a subpoena served on June 25, 2025, raising objections 2, 27, 37, and 44 days beyond the Rule 45(d)(2)(B) deadline. (Suppl. Gharavi Decl. ¶ 21.) Google now seeks additional time because of its own internal delays in processing service.

### 5. Google Manufactures Procedural Objections to Avoid Substantive Issues

Rather than address the substantive issues in Mr. Gharavi's Motion to Compel—including Google's complete waiver of objections under Rule 45(d)(2)(B), the interpretation of § 512(k)(1), and whether service providers may compartmentalize compliance—Google manufactures a procedural dispute.

By insisting that any perceived 'mischaracterizations' in an opposition justify a motion to strike, Google necessarily concedes that Mr. Gharavi could likewise move to strike Google's own instant motion to strike. In contrast, Mr. Gharavi addressed any supposed misstatements on the merits in his opposition, rather than seeking to strike Google's entire filing. The motion to strike thus operates purely as a procedural gambit to evade the substantive issues—namely, the proper scope of § 512(h) and whether

Google's reading would effectively **nullify that statute**.

### 6. Granting the Motion Would Reward Google's Bad Faith Conduct

Granting the Motion to Strike would:

- Reward Google's unperformed commitments (failure to authorize email service, failure to respond to August 25 email)
- Reward Google's untimely objections (2, 27, 37, 44 days late)
- Reward Google's internal delays (6-day lag between agent service and counsel receipt)
- Reward Google's strategic non-responsiveness (5+ weeks ignoring "ripe, justiciable controversy" email)
- Punish Mr. Gharavi's good faith compliance with applicable rules

Google contributed to delay at every stage and then filed a motion to strike, explicitly conditioning it on Mr. Gharavi's decision not to grant a voluntary extension to which Google was not entitled. The Court should not reward this conduct.

### 7. Fourteen Days Is Sufficient

Local Rule 7-3(a) provides 14 days for opposition. Google received that full time. The rule does not provide exceptions for:

- Internal delays in processing service
- Failure to authorize email service
- Reassignment of judges
- Uncertainty about which standing order applies

These are issues Google created or could have resolved through timely communication. They do not constitute good cause for extension or grounds to strike a properly filed motion.

The Court should deny the Motion to Strike and require Google to respond to Mr. Gharavi's Motion to Compel within the time required by Local Rule 7-3(a).

### G.  Mr. Gharavi Acted in Good Faith Reliance

As a *pro se* party with no legal education facing a 1,200-attorney international law firm, Mr. Gharavi researched extensively and applied Local Rule 7-2(b) in good faith based on plain language, established precedent (*hey, inc*, *Reddit*), and Perkins Coie's own successful practice. (Suppl. Gharavi

Decl. ¶¶ 13-17.) He relied on the August 22 agreement and invested 171.8 hours over five weeks addressing Google's escalating objections. (Suppl. Gharavi Decl. ¶¶ 19-20.)

Courts liberally construe *pro se* filings and recognize the disadvantage *pro se* litigants face against sophisticated law firms. *Haines*, 404 U.S. at 520; *Erickson*, 551 U.S. at 94. If the Court has format concerns, case management alternatives exist short of striking a comprehensive brief addressing genuine substantive issues about Rule 45 waiver and § 512(k)(1) interpretation.

## V.    CONCLUSION

Google's Motion to Strike is a transparent attempt to avoid addressing substantive waiver while obtaining time beyond Local Rule 7-3(a)'s deadline. Mr. Gharavi reasonably applied Local Rule 7-2(b) based on plain language, precedent, and Perkins Coie's own practice in *hey, inc v. Twitter*. (Suppl. Gharavi Decl. ¶¶ 13-17).

Google's counsel agreed on August 22 that Judge Ryu's 5-day rule would not apply after declination, as evidenced by Mr. Hinnen's visible relief and neither counsel's objection. (Suppl. Gharavi Decl. ¶¶ 3-5). After Mr. Gharavi invested 171.8 hours in reliance, Google now reverses position. (Suppl. Gharavi Decl. ¶¶ 19-20).

Perkins Coie has adequate resources to respond within 14 days. Granting the Motion to Strike would reward Google's pattern of unperformed commitments, untimely objections filed 2, 27, 37, and 44 days late, and non-responsiveness while punishing Mr. Gharavi's good faith compliance. (Suppl. Gharavi Decl. ¶¶ 9, 21-24).

For these reasons, the Court should deny the Motion to Strike and require Google to respond to Mr. Gharavi's Motion to Compel within the time required by Local Rule 7-3(a).


Dated: October 17, 2025

Respectfully submitted,

/s/ Nima Gharavi
Nima Gharavi

Movant, *Pro Se*