1

NIMA GHARAVI, *pro se*
4610 North Clark St. #1098
Chicago, IL 60640
+1 (773) 899-4688
dmca@midwestwrestle.com

Movant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE DMCA 512(h) SUBPOENA TO
GOOGLE LLC

Case No. 3:25-mc-80164-WHO

**AMENDED OPPOSITION TO
RESPONDENT GOOGLE LLC'S MOTION
TO STRIKE MOVANT'S MOTION TO
COMPEL COMPLIANCE WITH DMCA
SUBPOENA**

Re: Dkt. Nos. 9, 28

Judge: Hon. William H. Orrick
Date: December 17, 2025
Time: 2:00 p.m.
Courtroom: Courtroom 2 – 17th Floor

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...............................................................................................1

II.   PROCEDURAL HISTORY..............................................................................2

III.  LEGAL STANDARD .......................................................................................3

   A.    Liberal Construction for Pro Se Filings .......................................................3

   B.    Motions to Strike Are Disfavored ...............................................................3

IV.   ARGUMENT .....................................................................................................3

   A.    Local Rule 7-2(b) Governs When Magistrate Lacks Final Decisional Authority ....................3

      1.    Mr. Gharavi's Declination Was Based on Binding Precedent, Not Procedural Manipulation 4

      2.    Practical Jurisdiction Trumps Technical "Assignment" ........................................6

   B.    August 22 Agreement Estops Google's Current Position .........................................9

   C.    Google's Allegation of Rule Violations Is Baseless and Unsupported ....................10

   D.    Google's Meet-and-Confer Allegations Are Contradicted by the Record ................11

      1.    The Record Refutes Google's Narrative .......................................................11

      2.    Google Was the Party That Obstructed Meet-and-Confers ..............................12

      3.    The Five-Week Period Reflects Research Time, Not Bad Faith ..........................12

      4.    Google's Own Unperformed Commitments Demonstrate Bad Faith ....................13

      5.    Google's Bad Faith Pattern: The Court Should Reject Google's Narrative ...........14

   E.    Google Systematically Mischaracterizes Communications to Mislead the Court.............14

      1.    Pattern of Mischaracterization ...............................................................14

      2.    Google's Pattern of Factual Misrepresentations Warrants Careful Review............16

      3.    Google's Inconsistent Service Date Representations .....................................16

      4.    The Standing Order Reversal....................................................................17

      5.    Google's Counsel Did Not "Explain Carefully and Clearly" Standing Order Requirements to Mr. Gharavi...............................................................18

F.   The Motion to Strike Is a Transparent Delay Tactic Explicitly Conditioned on Mr. Gharavi's Declination of an Unwarranted Extension ............................................................. 20

    1.   Google's Own Email Confirms the Delay Tactic ................................................. 20

    2.   Google Blames Mr. Gharavi for Google's Own Failures ..................................... 21

    3.   The Delay Was Caused by Google's Unperformed Commitments .......................... 21

    4.   Perkins Coie Has Adequate Resources ............................................................. 21

    5.   The Motion to Strike Serves No Legitimate Purpose ......................................... 22

    6.   Granting the Motion Would Reward Google's Bad Faith Conduct ....................... 22

    7.   Fourteen Days Is Sufficient ........................................................................... 23

G.   Mr. Gharavi Acted in Good Faith Reliance ............................................................. 23

V.   CONCLUSION ......................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Colaprico v. Sun Microsystems, Inc.*,
 758 F. Supp. 1335 (N.D. Cal. Mar. 13, 1991) ...............................................................3

*In re DMCA Subpoena To Reddit, Inc.*,
 383 F. Supp. 3d 900, (N.D. Cal. May 17, 2019).........................................................4, 9

*In re DMCA Subpoena to Reddit, Inc.*,
 441 F. Supp. 3d 875 (N.D. Cal. Mar. 2, 2020) .......................................1, 4, 6, 7, 9, 19, 23

*In re DMCA Subpoena to X Corp.*,
 No. 3:23-mc-80294-PHK (N.D. Cal. Jan. 17, 2024) .................................................8, 20

*In re Ex Parte Application of NC Dengen Kaihatsu KK*,
 No. 4:18-mc-80208-DMR (N.D. Cal. Apr. 11, 2019) ......................................................8

*Neilson v. Union Bank of Cal., N.A.*,
 290 F. Supp. 2d 1101 (C.D. Cal. Oct. 20, 2003).......................................................3, 21

*Visual Supply Co. v. Cloudflare, Inc.*,
 No. 3-24-mc-80159-WHO (N.D. Cal. Oct. 16, 2025) ......................................................3

*Woori Bank v. Kwang Seok Kwon*,
 No. 4:21-mc-80084-DMR (N.D. Cal. Aug. 5, 2021).......................................................8

**Statutes**

17 U.S.C. § 512(h) ...........................................................................................................2, 7

28 U.S.C. § 636(c)(1)......................................................................................................3, 10

**Rules**

N.D. Cal. Civ. L.R. 7-2(b) ..................................................................1, 3, 8, 10, 11, 23, 24

N.D. Cal. Civ. L.R. 7-3(a)...........................................................1, 2, 3, 17, 20, 21, 22, 23, 24

## I.   INTRODUCTION

Google LLC's Motion to Strike Movant's Motion to Compel Compliance with DMCA Subpoena (the "Motion to Strike" or "Mot.") [Dkt. No. 9] is a transparent delay tactic. Google filed the Motion to Strike on October 13, 2025, then filed a substantive opposition [Dkt. No. 17] three days later—proving the Motion to Strike serves no purpose except to circumvent Local Rule 7-3(a)'s 14-day deadline. Google's October 9 email explicitly conditioned this motion on Mr. Gharavi's declination of an unwarranted extension request. *See* Declaration of Elise Edlin ("Edlin Decl.") [Dkt. No. 9] Ex. 1, at 6.[1]

The Motion to Strike fails for three independent reasons:

**First**, Local Rule 7-2(b) applies. When Mr. Gharavi simultaneously filed his motion and declined magistrate jurisdiction on October 2, 2025, the matter became subject to reassignment because magistrate judges lack jurisdiction over dispositive miscellaneous matters absent consent. *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 880-82 (N.D. Cal. Mar. 2, 2020). Local Rule 7-2(b) governs motions filed before assignment to the district judge who will hear the matter, establishing that such motions shall be contained in "one filed document not exceeding 25 pages in length."

**Second**, this practice is well-established. Multiple parties have successfully filed 20+ page briefs in miscellaneous proceedings under Local Rule 7-2(b), including in DMCA subpoena matters in this District. *See generally Id.* (20-page motion to quash and 19-page opposition in DMCA § 512(h) proceeding).

**Third**, Google appeared to agree to this procedure on August 22, 2025. During the meet and confer, Mr. Gharavi explicitly stated Judge Ryu's 5-day rule would not apply because he intended to decline magistrate jurisdiction. *See* Supplemental Declaration of Nima Gharavi ("Suppl. Gharavi Decl.") [Dkt. No 10-1] ¶¶ 3-5. Neither Todd Hinnen ("Mr. Hinnen") nor Elise Edlin ("Ms. Edlin") objected. *Id.* ¶ 5. After Mr. Gharavi invested 171.8 hours relying on this understanding, Google now reverses position. *Id.* ¶¶ 19-20.

The record demonstrates that Mr. Gharavi properly applied Local Rule 7-2(b), Google's counsel appeared to agree to this framework during the August 22 meet-and-confer, and Google's Motion to Strike is explicitly conditioned on Mr. Gharavi's declination of an unwarranted extension.

---

[1] For clarity, all page numbers referenced herein are to the ECF page number at the top of the page.

Google received proper service on October 2 (Suppl. Gharavi Decl. ¶ 11), and had 14 days under Local Rule 7-3(a) to respond. That is sufficient. Striking the motion would reward Google's pattern of unperformed commitments and untimely objections filed 2, 27, 37, and 44 days late. Suppl. Gharavi Decl. ¶ 21.

For these reasons, the Court should deny the Motion to Strike.

## II. PROCEDURAL HISTORY

On June 25, 2025, Mr. Gharavi served a DMCA § 512(h) subpoena on Google LLC. *See* DMCA Subpoena [Dkt. No. 2] and Declaration of Nima Gharavi ("Gharavi Decl.") [Dkt. No. 3-1] ¶ 4. On July 11, 2025—16 days later and two days beyond the Rule 45(d)(2)(B) deadline—Google served untimely objections. Suppl. Gharavi Decl. ¶ 21(a); Gharavi Decl. ¶ 7, Ex. C, at 42. On August 5, 2025, Google raised new objections 41 days after service. Suppl. Gharavi Decl. ¶ 21(b); Gharavi Decl. ¶ 22, Ex. A, at 29-30. On August 15, 2025, Google raised further objections 51 days after service. Suppl. Gharavi Decl. ¶ 21(c); Gharavi Decl. ¶ 20. On August 22, 2025, Google raised additional objections 58 days after service. Suppl. Gharavi Decl. ¶ 21(d); Gharavi Decl. ¶ 23, Ex. N, at 106-08.

During the August 22, 2025 videoconference, the parties reached an impasse requiring motion practice, during which Mr. Gharavi explicitly stated he would decline magistrate jurisdiction and Judge Ryu's 5-day rule would not apply. Suppl. Gharavi Decl. ¶¶ 3-5. Neither counsel objected. *Id.* ¶ 5. The parties discussed email service authorization, with Mr. Hinnen indicating it was likely subject to confirmation. Suppl. Gharavi Decl. ¶ 23. As of the filing of this brief—108 days after the August 22 videoconference—Google *still* has not authorized email service. *See* Second Supplemental Declaration of Nima Gharavi ("Second Suppl. Gharavi Decl.") [Dkt. No. 31-1] ¶ 14.

On August 25, 2025, Mr. Gharavi emailed both counsels stating there was a "ripe, justiciable controversy" and again asking whether Google authorized email service. Suppl. Gharavi Decl. ¶ 8; Gharavi Decl. ¶ 27, Ex. A, at 18. Google never responded. Suppl. Gharavi Decl. ¶ 9.

On October 2, 2025, Mr. Gharavi simultaneously filed his Motion to Compel Compliance with DMCA Subpoena ("Motion to Compel") and Declination of Magistrate Jurisdiction ("Declination"). [Dkt. Nos. 3, 5]. Mr. Gharavi served Google LLC's registered agent that same day by hand delivery at 3:59 p.m. Central Time. *See* Certificate of Service [Dkt. No. 3-3]; Suppl. Gharavi Decl. ¶ 11. Google's

counsel represented in an October 9, 2025 email that they received the motion on October **8**, 2025. Edlin Decl. Ex. 1, at 9; Suppl. Gharavi Decl. ¶ 12. However, the Edlin Declaration states counsel received the motion on October **7**, 2025. Edlin Decl. ¶ 5. In either case, under Local Rule 7-3(a), Google's opposition was due 14 days after service—October 16, 2025.

## III.    LEGAL STANDARD

### A.  Liberal Construction for Pro Se Filings

Courts must liberally construe *pro se* filings. *Haines v. Kerner*, 404 U.S. 519, 520 (Jan. 13, 1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (Jun. 4, 2007). Technical procedural defects do not warrant striking substantive motions where good faith is shown.

### B.  Motions to Strike Are Disfavored

"Motions to strike are generally regarded with disfavor . . . **because they are often used as a delaying tactic**." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. Oct. 20, 2003) (emphasis added); see also *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. Mar. 13, 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have **no possible bearing** on the subject matter of the litigation.") (emphasis added).

## IV.    ARGUMENT

### A.  Local Rule 7-2(b) Governs When Magistrate Lacks Final Decisional Authority

When Mr. Gharavi simultaneously filed his motion and declined magistrate jurisdiction pursuant to 28 U.S.C. § 636(c)(1) on October 2, 2025, the matter required reassignment to a district judge. Under federal law, magistrate judges may issue binding orders on dispositive matters only with the parties' written consent. Courts in this District have repeatedly applied this principle to DMCA subpoena enforcement proceedings. *See Visual Supply Co. v. Cloudflare, Inc.*, No. 3-24-mc-80159-WHO, slip op. at 3:4-5 (N.D. Cal. Oct. 16, 2025) ("[U]nder Federal Rule of Civil Procedure 73 'all parties' must consent to magistrate judge jurisdiction."). In such circumstances, Local Rule 7-2(b) governs.

Local Rule 7-2(b) establishes that motions shall be contained in "one filed document not exceeding 25 pages in length." N.D. Cal. Civ. L.R. 7-2(b). This generally applicable rule governs motions filed before assignment to the judge who will hear the matter. When a magistrate judge lacks final decisional authority over a dispositive matter—either because parties have not yet consented to

magistrate jurisdiction or because a party has declined such jurisdiction—district-wide Local Rules provide the governing procedural framework for motion practice. Standing orders presuppose the judicial authority to issue orders; they cannot govern matters outside that authority. Local Rule 7-2(b) establishes the page limit framework for motions in such circumstances. Google's claim that this creates a "procedural vacuum in which no rules apply" (Mot. at 7:11-12) is refuted by the District's consistent practice in analogous miscellaneous proceedings.

1. **Mr. Gharavi's Declination Was Based on Binding Precedent, Not Procedural Manipulation**

Google's reply characterizes Mr. Gharavi's simultaneous filing of his motion and declination of magistrate jurisdiction as "manipulation" designed to evade standing orders. *See* Non-Party Google LLC's Reply in Support of Its Motion to Strike Movant's Motion to Compel Compliance with DMCA Subpoena ("Google's MTS Reply") [Dkt. No. 22] at 6-7. This characterization ignores the substantive jurisdictional justification Mr. Gharavi explained to Google's counsel during the August 22 meet-and-confer—justification based on binding district precedent that prevents the exact waste of judicial resources documented in *Reddit.* 441 F. Supp. 3d at 880-82.

During the August 22 call, Mr. Gharavi explained his concern about magistrate jurisdiction over this matter. The DMCA Subpoena seeks subscriber information for eight separate YouTube accounts, meaning eight separate unknown users are potentially subject to the subpoena's disclosure requirements. Second Suppl. Gharavi Decl. ¶ 3. Under *Reddit*, enforcement motions regarding DMCA subpoenas are dispositive matters that require the consent of all parties for a magistrate to exercise final jurisdiction. 441 F. Supp. 3d at 880-82; *see also In re DMCA Subpoena to X Corp. dba Twitter*, No. 3:23-mc-80294-PHK, slip op. at 2 (N.D. Cal. Jan. 17, 2024) ("As such, the undersigned lacks jurisdiction absent consent of both Parties."). Without such consent, the magistrate can only issue a report and recommendation subject to *de novo* review by a district judge. *Reddit*, 441 F. Supp. 3d at 880-82.

The problem this creates is documented in the history of *Reddit* itself. In that case, the magistrate issued an order on a motion to quash a DMCA subpoena, partially granting and partially denying the motion. *In re DMCA Subpoena To Reddit, Inc.*, 383 F. Supp. 3d 900, 916 (N.D. Cal. May 17, 2019). When the unknown user (Darkspilver) later sought *de novo* review and did not consent to magistrate

4

jurisdiction, the Court determined that "in the absence of express or implied consent by Darkspilver, magistrate judge jurisdiction was never created under Section 636(c)." *Reddit*, 441 F. Supp. 3d at 882. As a result, the Court treated the magistrate's order as a report and recommendation and conducted *de novo* review. *Id.* After that review, the Court reached a different conclusion than the magistrate—granting the motion to quash where the magistrate had only partially granted it. *Id.* at 877-78, 884, 887.

This demonstrates the judicial waste Mr. Gharavi sought to avoid. The magistrate's work—briefing, argument, analysis, order—had to be entirely repeated through *de novo* district court review because the unknown party did not consent to magistrate jurisdiction. Had the matter been filed before a district judge from the outset, this duplication would have been avoided.

Here, Mr. Gharavi cannot contact the eight unknown YouTube account holders to obtain their consent to magistrate jurisdiction. Second Suppl. Gharavi Decl. ¶ 3. Filing the motion before a magistrate judge risked that if even one of the eight users later surfaced and contested jurisdiction—as happened in *Reddit*—the Court's work would need to be repeated through *de novo* review. Declining magistrate jurisdiction upfront prevents this waste of judicial resources.

Mr. Gharavi explained this reasoning during the August 22 meet-and-confer. Second Suppl. Gharavi Decl. ¶¶ 3-4. Mr. Hinnen affirmatively and unequivocally stated he was unfamiliar with whether magistrate standing orders apply to free-standing miscellaneous DMCA subpoena enforcement proceedings. Because Mr. Gharavi had already researched this narrow procedural issue and informed Google's counsel of the same, Mr. Hinnen asked Mr. Gharavi to send precedent on this issue. *Id.* ¶ 5. Mr. Gharavi indicated that he would be happy to do so, with the caveat that it would not apply to the instant matter, given that he intended to decline magistrate jurisdiction. *Id.* ¶ 6. Neither Google counsel objected to Mr. Gharavi's characterization of the procedural consequences. *Id.*

Moreover, during the August 22 call, Google's counsel committed to confirming whether Google had notified the eight YouTube account holders about the subpoena and whether any of them had objected. *Id.* ¶ 12. As of December 8, 2025—108 days later—Google has not fulfilled this commitment. *Id.* ¶ 13. If Google had confirmed that all eight users consented to magistrate jurisdiction (or that none objected after notice), the *Reddit* concern would have been resolved. Google's failure to provide this information after committing to do so only reinforces the prudence of Mr. Gharavi's declination.

The contemporaneous record proves Mr. Gharavi identified a legitimate jurisdictional concern based on district precedent, explained it to Google's counsels during the August 22 call, and took the procedurally appropriate step of declining magistrate jurisdiction to avoid the exact problem *Reddit* documented. This is *not* manipulation—this is careful attention to jurisdictional requirements.

### 2.  Practical Jurisdiction Trumps Technical "Assignment"

Google's MTS Reply makes a sophisticated distinction between "reassignment" and "unassignment," arguing that Mr. Gharavi's declination was merely a request for reassignment and that the case remained "assigned" to the magistrate judge (subject to her standing order) until the Clerk acted on that request. This argument creates an impossible procedural paradox that only Local Rule 7-2(b) can resolve.

Once Mr. Gharavi filed his declination of magistrate jurisdiction on a dispositive matter, the magistrate judge no longer possessed authority to issue a binding order on Mr. Gharavi's motion. See *Reddit*, 441 F. Supp. 3d at 881 (without the consent of all parties, magistrate judges may only issue reports and recommendations on dispositive matters). Even if the case remained technically "assigned" to the magistrate judge during the administrative interval between declination and reassignment, she lacked the practical jurisdiction to decide Mr. Gharavi's Motion to Compel as a final order.

Google's argument requires Mr. Gharavi to have noticed his motion for hearing before the magistrate judge under her standing order, despite simultaneously declining her jurisdiction over that very motion. This creates an unresolvable procedural paradox:

- If the magistrate judge's standing order applied, Mr. Gharavi would need to notice the motion for hearing before her using her 5-day joint discovery letter brief procedure.
- But Mr. Gharavi simultaneously declined her jurisdiction, meaning she could not issue a final order, only a Report and Recommendation.
- Therefore, noticing a hearing before the magistrate judge would be procedurally meaningless—she lacked authority to decide the motion Mr. Gharavi was asking her to decide.

Standing orders presuppose judicial authority to decide the matters they govern. A magistrate judge's standing order requiring joint discovery letter briefs assumes that magistrate has authority to issue final orders on those discovery disputes. Once party consent is withdrawn for dispositive matters, that

foundational assumption fails. The standing order cannot govern matters outside the magistrate's jurisdiction to finally decide.

Moreover, requiring compliance with standing orders designed for final decisions when seeking Reports and Recommendations would create absurdity: different procedural rules would apply depending on whether parties consent to magistrate jurisdiction, even though both tracks address the same substantive dispute. No case supports such bifurcated procedures, and Google cites none. The Local Rules provide uniform motion practice for matters requiring district court resolution—that is precisely when Local Rule 7-2(b) applies.

General Order No. 44's language directing the Clerk to "reassign" cases does not mean magistrate standing orders continue to apply during the administrative interval between declination and reassignment. The practical reality is that once Mr. Gharavi declined jurisdiction, the magistrate judge no longer had authority over final disposition of the motion, making Local Rule 7-2(b)'s 25-page limit—applicable to motions filed before judicial assignment—the only workable procedural framework.

Google's interpretation would create absurd results: any litigant declining magistrate jurisdiction would need to comply with standing orders of a judge who lacks authority to decide their motion. This *cannot* be what General Order No. 44 contemplates. Practical jurisdiction trumps technical "assignment" status in determining which procedural rules apply.

Google argues that *Reddit* proves magistrate judges can still "hear" matters after declination by issuing Reports and Recommendations. Google's MTS Reply at 4:19. But this misses the point. The question is not whether a magistrate *could* issue an R&R; it is what procedural rules apply when filing a motion that the magistrate cannot finally decide. Under Google's interpretation, Mr. Gharavi would need to notice a hearing under the magistrate's 5-day standing order for a motion the magistrate could only address through a Report and Recommendation subject to *de novo* district court review. This creates the very inefficiency *Reddit* documented—magistrate work entirely repeated through *de novo* review. 441 F. Supp. 3d at 882. Local Rule 7-2(b) provides the sensible framework: when filing a dispositive motion requiring district court decision, use the district-wide motion practice rules applicable before final judicial assignment.

The procedural distinction is clear and substantive. When a DMCA § 512(h) subpoena dispute

arises within a case already assigned to a magistrate judge with the consent of **all** parties, joint discovery letter briefing under that magistrate's standing order applies. *See generally X Corp.*, No. 3:23-mc-80294-PHK. But when filing a motion triggers judicial assignment—whether by opening a new miscellaneous proceeding or by simultaneously declining magistrate jurisdiction—Local Rule 7-2(b)'s formal motion practice governs. At the time of filing, it is impossible to predict which district judge will be assigned or what standing orders will apply; therefore, the district-wide Local Rules control. Judge Ryu's Standing Order § 14 applies only to non-dispositive discovery disputes in cases already assigned to her, or where parties to dispositive matters have consented to her jurisdiction. Mr. Gharavi simultaneously declined magistrate jurisdiction when filing his motion, triggering reassignment to a district judge and making Local Rule 7-2(b) applicable.

A free-standing miscellaneous subpoena proceeding is fundamentally different from a discovery dispute within an existing lawsuit. These matters require proper briefing commensurate with their dispositive nature, not the abbreviated letter format appropriate for routine discovery disputes between parties already before the Court. Google cannot conflate these distinct procedural categories to manufacture a supposed violation of standing order requirements that do not govern dispositive miscellaneous matters filed without consent to magistrate jurisdiction.

This practice is well-established in miscellaneous proceedings. Multiple parties have successfully filed motions exceeding 20 pages under Local Rule 7-2(b), demonstrating that this District's consistent practice is to apply the 25-page limit to dispositive miscellaneous matters:

- *In re Ex Parte Application of NC Dengen Kaihatsu KK*, No. 4:18-mc-80208-DMR, Dkt. No. 9 (N.D. Cal. Apr. 11, 2019) (22-page motion to quash subpoenas)
- *Woori Bank v. Kwang Seok Kwon*, No. 4:21-mc-80084-DMR, Dkt. No 9, 12 (N.D. Cal. 2021) (20-page motion to quash and 21-page opposition to motion to quash)

Google argues that 5-page discovery letters are more consistent with § 512(h)'s "expedited" nature than 25-page motions. Google's MTS Reply at 7 n.5. But § 512(h)'s expedition eliminates the need to file a lawsuit—not the need for full briefing once substantive disputes arise. DMCA subpoena enforcement motions raise complex issues about service provider obligations, § 512(k)(1) interpretation, and First Amendment concerns requiring dispositive-level briefing. In *Reddit*, the parties filed a 20-page

AMENDED OPPOSITION TO GOOGLE'S MOTION TO STRIKE MR. GHARAVI'S MOTION TO COMPEL
CASE NO. 3:25-mc-80164-WHO

motion to quash and 19-page opposition, and the Court conducted full briefing, followed by *de novo* review of First Amendment concerns. *See generally* 383 F. Supp. 3d 900 and 441 F. Supp. 3d 875. Courts routinely accept 20+ page briefs for these substantive disputes.

Mr. Gharavi's reliance on this framework was reasonable. He relied on *X Corp.* (magistrate lacks jurisdiction absent consent), direct experience in *In re DMCA 512(h) Subpoena to Dynadot Inc.*, No. 3:25-mc-80138-TLT, Dkt. No. 8 (N.D. Cal. July 16, 2025) (Clerk's reassignment to district judge when respondent failed to consent to magistrate jurisdiction), and the District's consistent practice in miscellaneous proceedings demonstrated by the cases cited above. Suppl. Gharavi Decl. ¶¶ 13-14, 17.

### B.  August 22 Agreement Estops Google's Current Position

During the August 22 videoconference, Mr. Gharavi explicitly informed both counsels that Judge Ryu's 5-day standing order would not apply because he intended to decline magistrate jurisdiction based on jurisdictional concerns regarding the eight unknown YouTube account holders subject to the subpoena. Suppl. Gharavi Decl. ¶ 3; Second Suppl. Gharavi Decl. ¶¶ 3-4. He explained he would file his motion when ready under the applicable Local Rules, and the parties could proceed from there. Suppl. Gharavi Decl. ¶ 3. This was a clear statement about the procedural framework that would govern the motion practice both parties understood was imminent.

Neither counsel objected to Mr. Gharavi's explicit statement that standing orders would not apply. *Id.* ¶ 5. When a *pro se* litigant clearly articulates his understanding of applicable procedures during a meet-and-confer, and experienced federal litigators representing a 1,200-attorney firm raise no objection or correction, the *pro se* party is entitled to rely on that apparent acquiescence. At minimum, Google is estopped from claiming five weeks later—after Mr. Gharavi invested 171.8 hours—that they disagreed all along but simply forgot to mention it.

Mr. Gharavi's contemporaneous notes state: "We presume we would proceed with the 5 day rule under DMR." *Id.* ¶¶ 6-7; Gharavi Decl. ¶ 23, Ex. N, at 108. The conditional language ("would proceed," "presume") demonstrates both parties understood application of Judge Ryu's rules was contingent on whether they would proceed before Judge Ryu—which they would not after declination. *Id.*

The Edlin Declaration confirms Judge Ryu's rules were discussed, but conspicuously omits that Mr. Gharavi explained the 5-day rule would not apply and that neither counsel objected. Edlin Decl. ¶ 3.

These omissions corroborate Mr. Gharavi's account. If counsel had disagreed with Mr. Gharavi's stated procedural framework, the Declaration would affirmatively state their objection. The silence is telling.

Google had multiple opportunities to object to the procedural format: during the August 22 call, in response to the August 25 email referencing "ripe, justiciable controversy" (Suppl. Gharavi Decl. ¶ 8), or during the five-week period before Mr. Gharavi filed his motion. Instead, Google *waited* until Mr. Gharavi declined their request for an unwarranted extension before raising this procedural objection for the *first time*—claiming that Mr. Gharavi should have filed a 5-page joint discovery letter brief under Judge Ryu's Standing Order rather than a 25-page motion under Local Rule 7-2(b)—only *after* Mr. Gharavi had already invested 171.8 hours preparing and filing his motion. Suppl. Gharavi Decl. ¶¶ 19-20. This timing is strategic and *manifestly unjust*.

### C.  Google's Allegation of Rule Violations Is Baseless and Unsupported

Google alleges Mr. Gharavi's Motion "is in violation of the Federal and Local Rules." (Mot. at 9:11.) Specifically, Google claims the Motion violates Local Rule 7-2(b)(2) because it "does not . . . list a hearing date." (Mot. at 5:9-10.) This accusation is both factually wrong and legally misguided.

**First**, Mr. Gharavi's Motion complies with all applicable Federal Rules. Federal Rule of Civil Procedure 45(d)(2)(B)(i) expressly authorizes a motion to compel compliance with a subpoena. Mr. Gharavi properly served Google LLC by hand-delivering the motion to Corporation Service Company ("CSC"), Google's registered agent for service of process, under Federal Rule of Civil Procedure 5(b)(2)(A). Certificate of Service; Suppl. Gharavi Decl. ¶ 11. And Mr. Gharavi exercised his statutory right to decline magistrate jurisdiction under 28 U.S.C. § 636(c)(1). Declination.

**Second**, Mr. Gharavi's Motion complies with Local Rule 7-2(b)(2). Google claims the Motion "does not . . . list a hearing date" in violation of Local Rule 7-2(b)(2). But this objection ignores the procedural reality: no district judge had been assigned when Mr. Gharavi filed his Motion to Compel.

When filing a motion triggers judicial assignment—as it did here after Mr. Gharavi declined magistrate jurisdiction on a dispositive matter—it is impossible to list a specific hearing date because the moving party does not know which judge will hear the matter or what that judge's calendar availability is. In such circumstances, it is standard practice to list "TBD" for the hearing information and await the Clerk's assignment of a judge, after which the motion is re-noticed with proper hearing details. Mr.

Gharavi followed this exact procedure. *See* Motion to Compel at 1 (listing "Judge: TBD, Date: TBD, Time: TBD, Courtroom: TBD"). Indeed, it would be impossible to list a specific hearing date before judicial assignment—a party cannot reserve a date on a judge's calendar that has not yet been assigned.

Local Rule 7-2(b)(2) requires that motions "list a hearing date," but this requirement presupposes that a hearing date is available to be listed. Where no district judge has been assigned and no hearing date exists, listing "TBD" is the only procedurally appropriate option. Google's hypertechnical reading would make it impossible for any party to file a motion that triggers judicial assignment—an absurd result that cannot be what the rule intends.

**Third**, Google's entire motion conflates standing orders—which are individual judges' regulation of practice in cases before them—with binding Federal and Local Rules. Standing orders express judicial preferences for case management but do not override statutory rights or create independent grounds to strike properly filed motions. The Court's standing order applies to matters proceeding before the Court with consent to magistrate jurisdiction. Standing orders presuppose the issuing judge has authority to decide the matter. Where that authority is absent, district-wide Local Rules govern.

Google's assertion that Mr. Gharavi's Motion "does not comply with the standing orders of any of the eight possible Magistrate or District Judges" (Mot. at 5:14-15) is demonstrably false. Multiple parties have successfully filed 20+ page briefs in miscellaneous proceedings under Local Rule 7-2(b), including 20-page DMCA subpoena briefs in *Reddit.*, 441 F. Supp. 3d 875.

Google's accusation that Mr. Gharavi's Motion violates "Federal and Local Rules" is a *serious* mischaracterization unsupported by any legal authority. The Court should disregard it.

**D.  Google's Meet-and-Confer Allegations Are Contradicted by the Record**

Google devotes an entire section (Mot. at 8-9) to accusing Mr. Gharavi of failing to meet and confer in good faith. This argument is unpersuasive coming from a party that obstructed resolution through shifting objections, ignored repeated requests to meet and confer, and ultimately canceled a scheduled conference less than five hours before it was to occur.

**1.  The Record Refutes Google's Narrative**

Google claims: "between August 25 and October 2, 2025, Mr. Gharavi did not attempt to contact anyone to discuss his outstanding requests." Mot. at 8:28-9:1. This fundamentally mischaracterizes both

the timeline and the nature of the dispute.

The August 22, 2025 meet-and-confer concluded with the parties at an impasse on substantive issues. Suppl. Gharavi Decl. ¶ 3; Gharavi Decl. ¶ 23, Ex. N at 108. Both parties understood that motion practice was the next step. Three days later, on August 25, Mr. Gharavi sent a follow-up email reaffirming this conclusion: "it would seem we have a ripe, justiciable controversy." Gharavi Decl. ¶ 27, Ex. A at 18; Suppl. Gharavi Decl. ¶ 8. This was not a request for further meet-and-confer—it was reaffirmation that the dispute had matured and formal resolution was necessary.

Google never responded to that email. Suppl. Gharavi Decl. ¶ 9. Not to dispute Mr. Gharavi's characterization of a "ripe, justiciable controversy." Not to suggest further discussions. Not to confirm email service authorization (which Mr. Gharavi also requested in that same email). **Nothing**. For over five weeks.

### 2.   Google Was the Party That Obstructed Meet-and-Confers

Google's accusation rings hollow given its own pattern of obstruction:

- **August 5, 2025:** Mr. Gharavi requested a meet and confer. Gharavi Decl. ¶ 27, Ex. A, at 28-29.
- **August 6, 2025:** After Google ignored the request, Mr. Gharavi sent a formal demand invoking Local Rule 37-1(a), noting that Google itself had previously requested the opportunity to meet and confer "in advance of any such filing." *Id.* ¶ 27, Ex. A, at 27-28.; *Id.* ¶ 7, Ex. C, at 45.
- **August 8, 2025:** Google finally agreed to meet on August 12. *Id.* ¶ 27, Ex. A, at 27.
- **August 12, 2025, 10:23 AM CT:** Less than five hours before the scheduled conference, Google canceled: "We apologise for the inconvenience but we are unable to take the meet and confer as scheduled on August 12th due to scheduling conflicts." *Id.* ¶ 19, Ex. A, at 25-26.

Mr. Gharavi—acting in good faith despite Google's shifting objections, repeated failures to respond to meet-and-confer requests, and last-minute cancellation of a scheduled conference—accommodated new outside counsel's travel schedule and agreed to reschedule for August 15. *Id.* ¶ 27, Ex. A, at 24-25. The parties met again on August 22, reaching the impasse that necessitated this Motion. Suppl. Gharavi Decl. ¶ 3.

### 3.   The Five-Week Period Reflects Research Time, Not Bad Faith

Google repeatedly emphasizes the "nearly six weeks" (Mot. at 3:14) or "41 days" (Mot. at 7:23)

between the last meet and confer and Mr. Gharavi's filing. This timeline is misleading in two ways.

First, as explained above, the parties had reached a "ripe, justiciable controversy" by August 25. Gharavi Decl. ¶ 27, Ex. A, at 18. Google does not—*because it cannot*—identify **what changed** during those weeks that would have made another meet and confer productive.

Second, Mr. Gharavi is a *pro se* party with *no* legal education. *Id.* ¶¶ 1, 29. He notified Google on August 25 that "as a pro se party concurrently running a solo business, I imagine it will take me more time than you might be traditionally accustomed to for a counterparty to perform the requisite legal research and motion drafting." *Id.* ¶ 27, Ex. A, at 18. The five weeks reflects the time required for a *pro se* party to research DMCA statutory requirements, legislative history, case law, and procedural rules, then draft comprehensive briefing addressing Google's *escalating* objections. Suppl. Gharavi Decl. ¶¶ 18-20.

### 4.  Google's Own Unperformed Commitments Demonstrate Bad Faith

During the August 22 meet and confer, Google's counsel committed to confirm two matters:

- Whether Google would authorize counsel to accept service via email (Edlin Decl. ¶ 3; Suppl. Gharavi Decl. ¶ 23); and

- Whether Google had notified the affected users and whether any had objected to disclosure.

Suppl. Gharavi Decl. ¶ 24. As of the filing of this brief, Google has never fulfilled either commitment. Second Suppl. Gharavi Decl. ¶¶ 12-14. When Mr. Gharavi followed up on August 25 asking about service authorization, Google did not respond. Suppl. Gharavi Decl. ¶ 9.

Mr. Gharavi diligently attempted to resolve this matter without court intervention. He sent multiple meet-and-confer requests, accommodated Google's scheduling needs after they canceled a conference on short notice, and participated in lengthy discussions on August 22, 2025. Gharavi Decl. ¶¶ 19-21, Ex. A, at 24-29. When the parties reached impasse on substantive issues, Mr. Gharavi sent a follow-up email three days later explicitly confirming: "it would seem we have a ripe, justiciable controversy." Gharavi Decl. ¶ 27, Ex. A at 18; Suppl. Gharavi Decl. ¶ 8. Google never responded. Suppl. Gharavi Decl. ¶ 9.

Despite Mr. Gharavi's good faith efforts, Google now accuses him of failing to meet and confer. This accusation is particularly galling given Google's conduct: Google *failed* to authorize email service

after twice being asked, then *complained* when Mr. Gharavi served its registered agent. Mot. at 5:2-4, 9:6-7. Google's bad faith accusations ring hollow given its pattern of ignoring meet-and-confer requests and canceling a scheduled conference on short notice.

### 5.  Google's Bad Faith Pattern: The Court Should Reject Google's Narrative

Federal courts require good-faith meet-and-confer efforts to "promote[] efficiency, reduce[] motion practice, preserve[] judicial resources, and create[] a clear record." Mot. at 8:20-22. The record shows the opposite: Google undermined this process by raising objections weeks and months after the Rule 45(d)(2)(B) deadline:

- Initial boilerplate objections: July 11, 2025 (2 days late)
- Address objection: August 5, 2025 (27 days late)
- Undue burden objection: August 15, 2025 (37 days late)
- Corporate structure objection: August 22, 2025 (44 days late)

Suppl. Gharavi Decl. ¶ 21; *see also* Motion to Compel at 3-8.

Each new objection required Mr. Gharavi to research and respond, prolonging the dispute Google now claims he failed to resolve expeditiously. Google cannot manufacture delay through its own untimely objections, then fault Mr. Gharavi for the time required to address them.

The meet-and-confer record shows Mr. Gharavi repeatedly sought to engage, while Google canceled the August 12 conference, ignored emails, failed to fulfill commitments, and raised untimely objections. Google's accusation of bad faith is a transparent attempt to shift blame for its own obstruction. The Court should reject it.

### E.  Google Systematically Mischaracterizes Communications to Mislead the Court

Throughout its Motion, Google employs loaded language and selective omissions to create a false narrative. When the Court examines the actual record—which Google has itself provided as an exhibit—the mischaracterizations become apparent.

### 1.  Pattern of Mischaracterization

| Google's Characterization | Actual Record | Location in Motion |
|---|---|---|
| Mr. Gharavi "demanded" | Email states: "please provide" and "thank you | p. 4 |

---

14

| AdSense information | for your continued cooperation" | |
|---|---|---|
| **Google "asked" Mr. Gharavi to withdraw the Motion** | Email uses identical "respectfully" language that Google criticizes Mr. Gharavi for using | p. 8 |
| **Mr. Gharavi "did not attempt to contact anyone"** | After August 25 email announcing "ripe, justiciable controversy," Google never responded for 5+ weeks | p. 9 |
| **Mr. Gharavi's "repeated refusal" to grant extension** | Mr. Gharavi declined twice with detailed, substantive explanations—same language Google uses ("respectfully decline") | p. 9 |
| **Mr. Gharavi "refused" to proceed properly** | Mr. Gharavi "respectfully" declined Google's requested delay, explaining his position in detail | p. 3 |

Three examples illustrate this pattern:

**First**, Google states Mr. Gharavi "demanded" AdSense information (Mot. at 4:9), suggesting aggressive, unreasonable conduct. The actual email states "please provide (to the extent available)" and closes with "thank you for your continued cooperation in resolving this matter." Gharavi Decl. ¶ 27, Ex. A, at 30-31. This is professional correspondence, not a demand.

**Second**, Google claims it "asked" Mr. Gharavi to withdraw the Motion and proceed "consistent with the rules" (Mot. at 8:1-4), framing Google's request as reasonable guidance. Although Mr. Gharavi "respectfully decline[d]" Google's extension request (Edlin Decl. Ex. 1, at 2, 6), Google insists he "refus[ed]" (Mot. at 9:8-10, 9:28), implying bad faith. Both parties communicated professionally using identical "respectfully" language, yet Google characterizes Mr. Gharavi's conduct *alone* as unwarranted.

**Third**, Google states "between August 25 and October 2, 2025, Mr. Gharavi did not attempt to contact anyone" Mot. at 8:28-9:1. This ignores that Mr. Gharavi's August 25 email explicitly stated "it would seem we have a ripe, justiciable controversy." Gharavi Decl. ¶ 27, Ex. A, at 18; Suppl. Gharavi Decl. ¶ 8. This was reiteration to the conclusion already reached during the August, 22, 2025 meet and confer that the parties had reached impasse and formal resolution was necessary. Google never responded. Suppl. Gharavi Decl. ¶ 9. Google cannot now claim Mr. Gharavi failed to communicate when

Google itself ignored Mr. Gharavi's communication signaling that further informal resolution was futile.

This pattern of selective quotation, loaded characterization, and strategic omission runs *throughout* Google's Motion.

### 2. Google's Pattern of Factual Misrepresentations Warrants Careful Review

Before addressing the substantive mischaracterizations above, the Court should note one objective misrepresentation—repeated four times—that demonstrates a pattern of inaccuracies in Google's factual representations. Google repeatedly claims Mr. Gharavi submitted "more than 100 pages of exhibits" (Mot. at 3:16-17, 5:5-7, 8:7-9, 9:19-22), but the docket shows otherwise. Exhibit A begins at page 17 and Exhibit N ends at page 108 (Gharavi Decl., at 17-108)—a total of 92 pages, of which 14 are mandatory exhibit cover sheets required to properly identify exhibits. Even counting these procedurally required separators, the total is 92 pages—not "more than 100." This is not a good-faith estimate; it is a deliberate exaggeration designed to make Mr. Gharavi's filing appear more burdensome than it is.

When a party objectively misstates verifiable facts like page counts, it undermines confidence in its characterizations of less easily verified matters. The pattern of inaccuracies in Google's representations—exaggerated page counts, selective quotation from meet-and-confer discussions, and loaded characterizations of procedural decisions—suggests a systematic approach rather than isolated error. The Court should review Google's factual representations with appropriate skepticism, particularly where Google characterizes the substance of communications. The actual emails (already in the record at Gharavi Decl., Ex. A) directly contradict Google's characterization.

When a party systematically mischaracterizes the record, the Court may appropriately draw a negative inference from that pattern of selective quotation, exaggeration, and strategic omission. Google's credibility on factual matters is undermined by its demonstrable misrepresentations.

### 3. Google's Inconsistent Service Date Representations

Mr. Gharavi properly served Google's registered agent on October 2, 2025 at 3:59 PM Central Time, as documented in the Certificate of Service. Suppl. Gharavi Decl. ¶ 11. Yet the Edlin Declaration creates ambiguity about service dates, stating: "On October 7, 2025, my colleagues and I received a forwarded copy of Mr. Gharavi's Motion, from Google, who informed us that **Mr. Gharavi had served Google's formal agent of process, Corporation Service Company, on October 6, 2025**." Edlin Decl.

¶ 5 (emphasis added). This misstates the service date—whether through Google's error in notifying counsel or counsel's error in the Declaration.

Additionally, Google cannot keep its story straight about when counsel received the motion. The Edlin Declaration states counsel received it on October 7 (Edlin Decl. ¶ 5), while Edlin's October 9 email states "yesterday afternoon"—October 8. Edlin Decl., Ex. 1, at 9. These inconsistencies exemplify the pattern of misrepresentation that *pervades* Google's Motion. Regardless, service was proper on October 2, giving Google the full 14 days under Local Rule 7-3(a).

The 5-6 day transmission time from registered agent to counsel reflects Google's own internal processes—a delay that could have been eliminated had Google authorized email service as committed during the August 22 meet-and-confer. Suppl. Gharavi Decl. ¶ 23; Second Suppl. Gharavi Decl. ¶ 14. Google cannot complain about delays its own failure to authorize email service created.

### 4.  The Standing Order Reversal

Google's most significant mischaracterization concerns the August 22 agreement regarding procedural rules.

**What Actually Happened:** During the August 22 meet and confer, Mr. Gharavi explicitly stated that he intended to decline magistrate jurisdiction and that Judge Ryu's 5-day standing order would not apply. Suppl. Gharavi Decl. ¶¶ 3, 5. He explained he would file his motion under the applicable Local Rules when ready, and the parties could proceed from there. Suppl. Gharavi Decl. ¶ 3; Second Suppl. Gharavi Decl. ¶¶ 3-4.

**Google's Current Position:** Google now claims Judge Ryu's Standing Order applied throughout (Mot. at 7:3-12), that the Motion to Compel violates "Judge Ryu's Standing Order and the standing orders of every other Judge and Magistrate Judge in the Oakland Division" (Mot. at 5:6-7), and that Google "explained carefully and clearly" these requirements to Mr. Gharavi. Mot. at 8:1.

This is a *complete reversal* of position. Mr. Hinnen is a former Ninth Circuit law clerk. If he disagreed with Mr. Gharavi's understanding that Judge Ryu's standing order would not apply after declining magistrate jurisdiction, he had every obligation to say so during the meet and confer. Suppl. Gharavi Decl. ¶ 5; Second Suppl. Gharavi Decl. ¶¶ 3-6.

Mr. Gharavi relied on this understanding and invested 171.8 hours over five weeks. Suppl.

Gharavi Decl. ¶¶ 19-20. Google cannot now claim—*after* Mr. Gharavi filed his motion—that it disagreed all along but failed to mention it.

### 5.    Google's Counsel Did Not "Explain Carefully and Clearly" Standing Order Requirements to Mr. Gharavi

Google's Motion to Strike asserts that during the August 22, 2025 meet-and-confer, its counsel "explained carefully and clearly the requirements of the Magistrate Ryu's Standing Order, and the standing orders of other Judges and Magistrate Judges in the Oakland Division." Mot. at 8:1-3 (citing Edlin Decl. ¶¶ 2-3). This assertion is demonstrably false. The contemporaneous email record proves the opposite: during the August 22 call, Google's counsel Mr. Hinnen stated he was uncertain whether magistrate standing orders regarding joint discovery letter briefs apply to free-standing miscellaneous DMCA subpoena proceedings as opposed to traditional civil proceedings. Second Suppl. Gharavi Decl. ¶ 5. When Mr. Gharavi informed him that such standing orders do apply *when all parties consent* to magistrate jurisdiction, Mr. Hinnen asked Mr. Gharavi to send precedent supporting this. *Id.* Mr. Gharavi agreed, clarifying that *it would not be relevant* to the instant matter given his intent to decline magistrate jurisdiction, but would forward the precedent in the interest of professional courtesy. *Id.* ¶ 6.

The August 22, 2025 meet-and-confer was scheduled from 2:00 to 2:30 p.m. Pacific Time. Second Suppl. Gharavi Decl. ¶ 7. At 3:01 p.m. Pacific Time—a mere 31 minutes after the call ended—Mr. Gharavi sent the following email to Google's counsel Mr. Hinnen and Ms. Edlin:

> Thank you for your time this afternoon. Even though it's technically **no longer applicable to our current matter**, you mentioned you would like me to send you precedent regarding the applicability of magistrate standing orders pertaining to joint discovery letter briefs when a matter is a free-standing miscellaneous proceeding rather than a traditional civil proceeding.

Second Suppl. Gharavi Decl. ¶¶ 7-8; Gharavi Decl. ¶ 27, Ex. A, at 20 (emphasis added). Mr. Gharavi then provided links to the complete docket and specific discovery letter briefs from *X Corp.*, No. 3:23-mc-80294, demonstrating magistrate standing order procedures in DMCA subpoena enforcement matters where all parties consent. *Id.* Mr. Hinnen replied: "Thank you, Nima – I appreciate the professional courtesy. Have a good weekend, Todd." *Id.*

This exchange reveals four critical facts that directly contradict Google's representation:

**First**, during the August 22 call, Mr. Hinnen stated he was uncertain whether magistrate standing orders apply to free-standing miscellaneous DMCA proceedings as opposed to traditional civil proceedings. Mr. Gharavi informed him that based on his own recent research, magistrate standing orders do apply when parties consent to magistrate jurisdiction. Mr. Hinnen then asked whether Mr. Gharavi would send him precedent supporting this. Second Suppl. Gharavi Decl. ¶ 5. Google cannot credibly claim its counsel "explained carefully and clearly" standing order requirements to Mr. Gharavi when the contemporaneous record shows Mr. Hinnen was uncertain about this issue and asked Mr. Gharavi to provide precedent.

**Second**, Mr. Gharavi explicitly stated in his email that the standing order issue was "technically no longer applicable to our current matter"—because he had informed Google's counsel during the call that he intended to decline magistrate jurisdiction. Second Suppl. Gharavi Decl. ¶¶ 4, 6, 8. Despite this, Mr. Gharavi agreed to send the precedent anyway as a professional courtesy, so that Google's counsel would have it available for future cases. *Id.* Neither Mr. Hinnen nor Ms. Edlin objected to Mr. Gharavi's statement that magistrate standing orders were "no longer applicable" after declination of jurisdiction. *Id.* ¶ 6. If Google's counsel disagreed with this characterization, they had every professional obligation to clarify that disagreement rather than simply thanking Mr. Gharavi for "professional courtesy."

**Third**, Mr. Hinnen's acknowledgment—thanking Mr. Gharavi for "professional courtesy"—was in response to Mr. Gharavi sending precedent that was unnecessary for their current matter but that Mr. Hinnen had requested for his own future reference. This confirms that the flow of information during the August 22 call was Mr. Gharavi informing Google's counsel about standing order applicability based on Mr. Gharavi's recent case-specific research, not Google's counsel explaining procedures to Mr. Gharavi.

**Fourth**, the email's timing—sent just 31 minutes after the scheduled call ended—establishes this was Mr. Gharavi immediately documenting what was discussed during the call itself: that Google's counsel had asked for precedent regarding standing order applicability that Mr. Gharavi had referenced, and that Mr. Gharavi had explained it was no longer applicable to their case because he intended to decline magistrate jurisdiction.

The next day, August 23, 2025, Mr. Gharavi sent a follow-up email to Ms. Edlin (who, unlike Mr. Hinnen, had not claimed familiarity with *Reddit*, 441 F. Supp. 3d 875). Second Suppl. Gharavi Decl.

¶¶ 5, 10. That email stated:

> It just occurred to me that an order from [the magistrate judge] in the same case I referenced below does a better job of eloquently articulating what I was attempting to communicate on our call yesterday with regard to magistrate jurisdiction over dispositive matters.

Second Suppl. Gharavi Decl. ¶ 10; Gharavi Decl. ¶ 27, Ex. A, at 19. Mr. Gharavi then provided a link to the Order at Dkt. No. 9 in *X Corp.*, No. 3:23-mc-80294-PHK, which addresses magistrate jurisdiction over dispositive DMCA enforcement matters. *Id.* This confirms that during the August 22, 2025 call, Mr. Gharavi was informing Google's counsel—not learning from them—the jurisdictional implications of declining magistrate authority over dispositive motions.

The contemporaneous written record, created within 31 minutes of the August 22 call, proves Google's Motion to Strike assertion is false. Google's counsel did not "explain carefully and clearly" standing order requirements to Mr. Gharavi. Rather, during the call, Mr. Gharavi informed Google's counsel—based on his recent research into the specific procedures applicable to his case—that magistrate standing orders do apply to miscellaneous DMCA proceedings when parties consent to magistrate jurisdiction. Google's counsel, who was uncertain about this, asked Mr. Gharavi to provide supporting precedent. The fact that Mr. Gharavi had recently researched this narrow procedural question specific to his case, while Google's counsel—despite representing a sophisticated 1,200-attorney firm—was uncertain about it, demonstrates that this is an obscure procedural issue that neither party would have known without case-specific research. What the record shows is a *pro se* litigant who had done his homework on the specific procedures applicable to his case providing information to counsel who had not yet researched that same issue.

**F. The Motion to Strike Is a Transparent Delay Tactic Explicitly Conditioned on Mr. Gharavi's Declination of an Unwarranted Extension**

Google's true purpose is revealed by both its own words and the structure of its Motion. This is not a good-faith procedural objection—it is a transparent attempt to obtain additional time beyond Local Rule 7-3(a)'s 14-day deadline.

**1. Google's Own Email Confirms the Delay Tactic**

On October 10, 2025, after Mr. Gharavi declined Google's extension request, counsel wrote: "I'd like to renew our request for an extension." **"If you do not** [reconsider], to preserve Google's ability to

brief these issues when a judge has been assigned and the applicable rules have been determined, **we will file an opposed motion for extension and motion to strike your motion** as improper as soon as possible." Edlin Decl. Ex. 1, at 6 (emphasis added). Google requested Mr. Gharavi's response "no later than 4 pm today"—less than four hours later. *Id.*

Google explicitly conditioned both motions—a motion for extension and a motion to strike—on Mr. Gharavi's decision not to grant an extension, and three days later filed *only* the motion to strike to gain the extension Mr. Gharavi properly declined.

Section B of the Motion confirms this strategy. After devoting seven pages to purported procedural violations, Google requests: "Should the Court decline Google's Motion to Strike, Google requests a short extension to prepare its opposition." Mot. at 9:18-10:4. The motion to strike is merely a vehicle for the extension request Google signaled it would seek in its October 10 email.

This is precisely the type of delay tactic courts disfavor. "Motions to strike are generally regarded with disfavor because . . . they are often used as a delaying tactic." *Neilson*, 290 F. Supp. 2d at 1152.

### 2.    Google Blames Mr. Gharavi for Google's Own Failures

Google complains that it needs additional time because counsel "only received Mr. Gharavi's improperly lengthy motion and exhibits several days after they were filed." Mot. at 5:19-22. But as explained in Section E above, Mr. Gharavi properly served Google's registered agent on October 2, 2025. Certificate of Service; Suppl. Gharavi Decl. ¶ 11. Any delay between service and counsel's receipt resulted from Google's own internal processes—not from any action by Mr. Gharavi.

### 3.    The Delay Was Caused by Google's Unperformed Commitments

Moreover, any delay between service on Google's registered agent (October 2) and receipt by counsel (October 7 or 8) resulted from Google's own failure to authorize email service. During the August 22 meet and confer, counsel committed to confirm authorization but never did—despite Mr. Gharavi's August 25 follow-up. *See* Section D above; Suppl. Gharavi Decl. ¶¶ 8-10, 23. Google cannot complain about delays its own non-responsiveness created.

### 4.    Perkins Coie Has Adequate Resources

Google's complaint about needing more time is particularly unconvincing given the resources at its disposal. Perkins Coie is a firm with approximately 1,200 attorneys. Google received proper service

on October 2, 2025, giving it 14 days until the October 16 opposition deadline under Local Rule 7-3(a). This is the exact time period the Local Rule contemplates.

The irony is striking: Google spent months delaying compliance with a subpoena served on June 25, 2025, raising objections 2, 27, 37, and 44 days beyond the Rule 45(d)(2)(B) deadline. Suppl. Gharavi Decl. ¶ 21. Google now seeks additional time because of its own internal delays in processing service.

### 5. The Motion to Strike Serves No Legitimate Purpose

Google filed its Motion to Strike on October 13, 2025, then filed a substantive opposition to the Motion to Compel three days later on October 16, 2025. The Motion to Strike did not prevent Google from litigating the substantive issues—Google has already done so in its opposition brief. Rather, the Motion to Strike exists solely as leverage to obtain additional time beyond Local Rule 7-3(a)'s 14-day deadline.

When Mr. Gharavi declined to grant the voluntary extension, Google filed the Motion to Strike as threatened, then proceeded to file a substantive opposition anyway. This sequence confirms the Motion to Strike is a procedural pressure tactic designed to obtain time Google is not entitled to receive, not a good-faith effort to address genuine procedural defects.

The proper response to any perceived mischaracterizations in Mr. Gharavi's brief is Google's opposition brief—which Google has filed. Filing an additional motion to strike a properly filed brief serves no purpose except to create additional work for the Court and manufacture grounds for delay.

### 6. Granting the Motion Would Reward Google's Bad Faith Conduct

Granting the Motion to Strike would:

- Reward Google's unperformed commitments (failure to authorize email service, failure to respond to August 25 email)
- Reward Google's untimely objections (2, 27, 37, 44 days late)
- Reward Google's internal delays (6-day lag between agent service and counsel receipt)
- Reward Google's non-responsiveness (5+ weeks ignoring "ripe, justiciable controversy" email)
- Punish Mr. Gharavi's good faith compliance with applicable rules

Google contributed to delay at every stage and then filed a motion to strike, explicitly conditioning it on Mr. Gharavi's decision not to grant a voluntary extension to which Google was not entitled. The

Court should not reward this conduct.

### 7.  Fourteen Days Is Sufficient

Local Rule 7-3(a) provides 14 days for opposition. Google received that full time. The rule does not provide exceptions for:

- Internal delays in processing service
- Failure to authorize email service
- Reassignment of judges
- Uncertainty about which standing order applies

These are issues Google created or could have resolved through timely communication. They do not constitute good cause for extension or grounds to strike a properly submitted motion.

The Court should deny the Motion to Strike and require Google to respond to Mr. Gharavi's Motion to Compel within the time required by Local Rule 7-3(a).

### G.  Mr. Gharavi Acted in Good Faith Reliance

As a *pro se* party with no legal education facing a 1,200-attorney international law firm, Mr. Gharavi researched extensively and applied Local Rule 7-2(b) in good faith based on plain language, established precedent and the District's consistent practice in miscellaneous proceedings. Suppl. Gharavi Decl. ¶ 13. His research identified the specific jurisdictional problem documented in *Reddit*, 441 F. Supp. 3d at 880-82—that enforcement motions regarding DMCA subpoenas seeking information about multiple unknown users risk requiring duplicative *de novo* review if even one user later contests magistrate jurisdiction. Second Suppl. Gharavi Decl. ¶¶ 3-4. During the August 22 meet-and-confer, he explained this concern to Google's counsel, stated his intention to decline magistrate jurisdiction to avoid this waste of judicial resources, and explained that Judge Ryu's standing order would therefore not apply. *Id.* ¶¶ 3-6. Neither counsel objected or suggested this procedural approach was improper. *Id.* ¶ 6. Mr. Gharavi then invested 171.8 hours over five weeks preparing his motion in reliance on this understanding. Suppl. Gharavi Decl. ¶¶ 19-20.

Courts liberally construe *pro se* filings and recognize the disadvantage *pro se* litigants face against sophisticated law firms. *Haines*, 404 U.S. at 520; *Erickson*, 551 U.S. at 94. If the Court has format concerns, case management alternatives exist short of striking a comprehensive brief addressing genuine

substantive issues about Rule 45 waiver and § 512(k)(1) interpretation.

**V.    CONCLUSION**

Google's Motion to Strike is a transparent attempt to obtain time beyond Local Rule 7-3(a)'s deadline. Google filed a substantive opposition three days after filing the Motion to Strike, revealing the Motion to Strike as a pressure tactic to extract additional time rather than a legitimate procedural objection. Mr. Gharavi reasonably applied Local Rule 7-2(b) based on plain language, binding precedent, and the District's consistent practice in miscellaneous proceedings. Suppl. Gharavi Decl. ¶ 13.

Google's counsel did not object on August 22 when Mr. Gharavi stated that standing orders would not apply after declining magistrate jurisdiction. Suppl. Gharavi Decl. ¶¶ 3, 5; Second Suppl. Gharavi Decl. ¶ 6. Google now reverses position after Mr. Gharavi relied on their August 22 acquiescence throughout five weeks of *pro se* motion preparation. Suppl. Gharavi Decl. ¶¶ 19-20.

Perkins Coie had adequate resources to respond within 14 days. Granting the Motion to Strike would reward Google's pattern of unperformed commitments, untimely objections filed 2, 27, 37, and 44 days late, and non-responsiveness while punishing Mr. Gharavi's good faith compliance. Suppl. Gharavi Decl. ¶¶ 9, 21-24.

For these reasons, the Court should deny the Motion to Strike. Google received proper service on October 2, giving it the full 14 days under Local Rule 7-3(a) to respond. That time has passed. Google has already filed a substantive opposition, proving it suffered no prejudice and the Motion to Strike served only as a delay tactic. The Court should proceed to Mr. Gharavi's Motion to Compel on the existing briefing.

Dated: December 8, 2025

Respectfully submitted,

By: /s/ Nima Gharavi
      Nima Gharavi, *pro se*

Movant